# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | PRISONER |
|---|---|---|
| LUIS FERNANDEZ | : | CIVIL NO. 3:03CV146 (WWE)(HBF) |
| v. | : | |
| MONICA RINALDI, ET AL. | : | MAY 25, 2004 |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

This case is a civil rights action by Luis Fernandez, an inmate of the Connecticut Department of Correction, complaining that his constitutional rights were violated because he was charged $7.50 for photocopies for his Freedom of Information Act request in 2002. He seeks compensatory and punitive damages and wide-ranging injunctive relief for changes at the institution and personnel decisions concerning defendants. The defendants are eleven present or former officials of the Connecticut Department of Correction.

We urge the Court to render summary judgment for all of the defendants because:

1.　　The Eleventh Amendment bars this action against the defendants in their official capacities.

2.　　The State is not a "person" subject to liability under 42 U.S.C. § 1983.

3.　　Plaintiff's request for injunctive relief is moot.

4.　　The Amended Complaint fails to state a claim upon which relief can be granted.

5.　　The plaintiff has failed to demonstrate personal participation or responsibility.

6.　　The defendants are protected by their qualified immunity.

7.　　The Court should decline to accept jurisdiction over any state law claims in this case.

## FACTS

The plaintiff is an inmate of the Connecticut Department of Correction, MacDougall-Walker Correctional Institution in Suffield, Connecticut, currently serving twenty year and eight year sentences for drug convictions.  Def. Statement, para. 1.  The defendants were, at various times referenced in the plaintiff's Amended Complaint, employed by the Connecticut Department of Correction in various positions.  Def. Statement, para. 2.

On June 3, and again on June 13, 2002, plaintiff requested copies of his master file. Inmates' master files are often voluminous, containing many different types of records of the Department of Correction, generated by or sent to the Department of Correction, from mittimuses to disciplinary reports to program application records, some of which may be non-disclosable under the Connecticut Freedom of Information Act.  Accordingly, plaintiff was asked to specify which records he wanted.  Def. Statement, paras. 3, 4.

Plaintiff requested to view his master file so that he could identify the documents he needed, and his request was granted on June 18, 2002.  On July 18, 2002, after viewing the records with staff, plaintiff identified certain records which he wanted copied.  The records involved a certain disciplinary report and related records of an October 23, 2001 incident.  His request was acknowledged on July 19, 2002, and he was told that he would receive a response in the near future.  Def. Statement, paras. 5, 6, 7.

Plaintiff's request required document review for compliance with the Freedom of Information Act and it required a security review because the records involved a fight between plaintiff and another inmate, and the investigation of the matter.  That process took time and plaintiff was updated on the status of the response to his request on July 26, 2002 and again on August 13, 2002 .  Plaintiff's document request was finally determined to consist of 30 pages.

On August 19, 2002, plaintiff was notified that the cost would be $7.50 under the DOC policy to charge inmates 25 cents per page for Freedom of Information requests. Plaintiff made duplicate requests for the same material. He received consistent notification of the charge involved. Apparently, he never paid the charge and did not receive the documents. Def. Statement, paras. 8, 9, 10, 11.

The Connecticut Freedom of Information Act allows state agencies to charge 25 cents per page for copies of public records. Conn. Gen. Stat. § 1-212(a)(1). Fees are waived for indigent individuals, but the statute does not define indigency. Conn. Gen. Stat. § 1-212(d)(1). The DOC charges inmates 25 cents per page for photocopies under DOC Directive 3.10(8)(C) which provides:

8. <u>Photocopying Expense</u>. Fees for photocopying shall by received by the Department prior to documents being provided to the requestor.

    A. <u>Other State Agency</u>. There shall be no charge for another state agency for a copy of any document under 1000 pages. If the document is more than 1000 pages, the charge shall be twenty-five cents for each page. Any charge to another state agency may be waived in accordance with a reciprocal agreement to waive such fees.

    B. <u>General Public</u>. The charge for duplicating material for the general public shall be twenty-five cents for each page copied.

    C. <u>Inmates</u>. Photocopying for inmates shall normally be restricted to legal materials. Photocopying of any other materials shall be at the discretion and convenience of the Unit Administrator. An inmate shall be charged twenty-five cents for each page copied. The funds shall be deducted from the inmate's account prior to providing the inmate with the documents. The cost for an indigent inmate, as defined in Administrative Directive 6.10, Inmate Property, shall be waived.

DOC Directive 3.10(8); Exhibit M.

This section permits a waiver of fees for "legal materials" for "indigent inmates." An indigent inmate, for the purposes of this rule, is an inmate with less than five dollars in his or her account upon admission, or whose account has not exceeded five dollars for the previous 90 days. DOC Directive 6.10(3); Exhibit N. Legal materials means documents relating to a

3

pending legal action involving the inmate.  Id.; Def. Statement, paras. 12, 13, 14, 15.  Plaintiff

became qualified under this directive after August 20, 2002.  See Inmate Account Record, Def.

Statement para. 15, Exhibit W.  However, there is no evidence in this case that the records

requested by plaintiff involved a pending court case, nor does plaintiff allege that he identified it

as such to defendants.  Consequently, this waiver is not applicable in the instant case. Id.

As for Freedom of Information Act requests, no incarcerated inmate is considered

indigent for the purposes of calculating the fees associated with the production of documents

requested under the Freedom of Information Act.  The DOC takes this position because inmates

are not considered to be indigent in the sense contemplated by the Freedom of Information Act

due to the fact that their basic needs are provided for by the DOC, including food, clothing,

shelter and medical care.  Under federal poverty guidelines, individuals are considered in poverty

if their income is under $9,310.00 per year.  In Connecticut in 2004, the cost of incarcerating an

inmate is over $26,600.00 per year.  Def. Statement, paras. 16, 17, 18, 19, 20.

Plaintiff filed numerous petitions concerning his document request consistent with the

inmate grievance procedure available, and his petitions were addressed.  Def. Statement, para.

21.

## SUMMARY JUDGMENT STANDARDS

Under Rule 56(c), Fed.R.Civ.P., summary judgment is appropriate "if the pleadings,

depositions, answers to interrogatories and admissions on file, together with affidavits, if any,

show that there is no genuine issue as to any material fact, and that the moving party is entitled to

judgment as a matter of law."  It has been held that summary judgment may be entered against a

party who fails to make a showing sufficient to establish the existence of an element essential to

that party's case, and to which that party will bear the burden of proof at trial.  Celotex Corp. v.

Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed.2d 538 (1986); see also, Matsushita Elec.

Industrial Co. v. Zenith Radio, 475 U.S. 574, 568-87, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986).

When a motion for summary judgment is adequately supported by documentary exhibits,

depositions, answers to interrogatories or further affidavits, it must be controverted by a similar

response setting forth specific facts showing that there is a genuine issue for trial, absent which

summary judgment shall be entered, if appropriate. Foster v. Turner Broadcasting, 844 F.2d 955,

959 (2nd Cir. 1988), cert. denied, 488 U.S. 994 (1988). In other words, there must be "sufficient

evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). A party

opposing summary judgment may not rely on conjecture or conclusory assertions that the other

party is not telling the truth. See Gottlieb v. County of Orange, 84 F.3d. 511, 518 (2nd Cir.

1986). Summary judgment dispositions have been encouraged as a valuable means for avoiding

unnecessary trials, and modern Supreme Court and Second Circuit cases have encouraged its use

for that purpose. See e.g., Celotex, supra; H.L. Hayden Co. of N.Y. v. Siemens Medical

Systems, 879, F.2d 1005, 1011 (2nd Cir. 1989); Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2nd

Cir. (1986), cert. denied, 480 U.S. 932 (1987). It is particularly appropriate in cases under 42

U.S.C. § 1983 involving insubstantial claims such as this case. Harlow v. Fitzgerald, 457 U.S.

800, 816, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982).

## ARGUMENT

1. **The Eleventh Amendment Bars This Action Against The Defendants
   In Their Official Capacities**

It is now well established that a suit against a State official in his official capacity is, in

actuality, a suit against the State. Brandon v. Holt, 469 U.S. 464, 471, 105 S. Ct. 873, 83

L.Ed.2d 878 (1985); Schiff v. Kerrigan, 625 F. Supp. 704, 707 n.7 (D. Conn. 1986). The real

party in interest is the State. <u>Kentucky v. Graham</u>, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L.Ed.2d 114 (1985). It is equally well settled that the doctrine of sovereign immunity embodied by the Eleventh Amendment precludes a suit for damages against a state and its agencies. <u>Edelman v. Jordan</u>, 415 U.S. 651, 677, 94 S. Ct. 1347, 39 L.Ed.2d 662 (1974).

The Eleventh Amendment[1] is a constitutional limitation on the federal judicial power established in Article III, Section 2 of the United States Constitution in actions brought by a citizen against his own state. <u>Pennhurst State School & Hospital v. Halderman</u> (<u>Pennhurst II</u>), 465 U.S. 89, 98, 104 S. Ct. 900, 79 L.Ed.2 67 (1984); <u>Ex Parte State of New York No. 1</u>, 256 U.S. 490, 491, 41 S. Ct. 588, 65 L.Ed. 1057 (1921); <u>Hans v. Louisiana</u>, 134 U.S. 1, 15, 10 S. Ct. 504, 33 L.Ed. 842 (1890); <u>Minotti v. Lensink</u>, 798 F.2d 607, 609 (2nd Cir. 1986). Of course, a sovereign's Eleventh Amendment immunity may be waived by an unequivocally expressed consent to suit. <u>Pennhurst</u>, <u>supra</u>, at 99; <u>see</u>, <u>e.g.</u>, <u>Edelman v. Jordan</u>, 415 U.S. 651, 673, 94 S. Ct. 1347, 39 L.Ed.2d 662 (1974); <u>Clark v. Barnard</u>, 108 U.S. 436, 477 2 S. Ct. 878, 27 L.Ed. 780 (1893). Consent means an explicit statutory provision granting permission to sue. <u>Florida Dep't. of Health v. Florida Nursing Home Association</u>, 450 U.S. 147, 150, 101 S. Ct. 1032, 67 L.Ed.2d 132 (1981); <u>see</u> <u>also</u>, <u>Duguay v. Hopkins</u>, 191 Conn. 222, 227, 464 A.2d 45 (1983); <u>Comba v.</u>

---

[1]  The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state or by citizens or subjects of any foreign state.

Despite its limited language, it is well settled that this provision precludes federal court jurisdiction over suits brought against the state by its own citizens, absent consent. <u>Pennhurst State Schools & Hospital v. Halderman (Pennhurst II)</u>, 465 U.S. 89, 98, 104 S. Ct. 900, 79 L.Ed.2d 67 (1984); <u>Edelman v. Jordan</u>, 415 U.S. 651, 673-74, 94 S. Ct. 1347, 39 L.Ed.2d 662 (1974); <u>see</u> <u>also</u>, <u>Red Star Towing & Transportation Co. v. State of Connecticut</u>, 481 F. Supp. 1033, 1034 (D. Conn. 1976).

Ridgefield, 177 Conn. 268, 273, 413 A.2d 859 (1979).  In the instant case, plaintiff, in part, sues the defendants for money damages in their official capacities.  The plaintiff did not, and cannot, allege consent to suit.  Consequently, summary judgment should be rendered in defendants' favor on this point.

### 2.    The State Is Not A "Person" Subject To Liability Under 42 U.S.C. § 1983

42 U.S.C. § 1983 provides that, "Every person, who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory, subjects ... any citizen ... to the deprivation of any rights ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."  (Emphasis added).  The United States Supreme Court has refused, in view of the state's traditional sovereign immunity and the Eleventh Amendment, to construe the word "person" as including a State or its agencies.  Will v. Michigan Dept. of State Police, 491 U.S. 58, 109 S. Ct. 2304, 105 L.Ed.2d 45 (1989); see also Krozser v. New Haven, 212 Conn. 415, 562 A.2d 1080 (1989), cert. denied, 493 U.S. 1036 (1990).  Therefore, to the extent that this action is against the State through its officials, it is barred for this reason as well.

### 3.    Plaintiff's Request For Injunctive Relief Is Moot

An actual case or controversy must exist at every stage of the proceedings.  U.S. Const. Art. III; Preiser v. Newkirk, 422 U.S. 395, 401, 95 S. Ct. 2330, 45 L.Ed.2d 272 (1975).  Where a court can no longer grant the requested relief, the court must dismiss the case as moot.  "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed."  Martin-Trigona v. Shiff, 702 F.2d 380, 386 (2nd Cir. 1983).  In the case of an inmate confined in a correctional institution, the Second Circuit has held that an inmate's request for declaratory or injunctive relief becomes moot when the inmate is transferred from that

institution or released from the custody of the Department of Correction.  See, e.g., Young v. Coughlin, 866 F.2d 567, 568 n.1 (2nd Cir. 1989), cert. denied, 492 U.S. 909 (1989); Mawhinney v. Henderson, 542 F.2d 1, 2 (2nd Cir. 1976); Phillips v. Ienuso, 1995 W.L. 237062 (S.D.N.Y. 1995).

The allegations in the complaint in this case concern incidents that allegedly occurred at the Cheshire Correctional Institution in 2002.  The plaintiff is no longer housed at Cheshire Correctional Institution.  Def. Statement, para. 1.  Accordingly, the claims for declaratory and/or injunctive relief should be dismissed as moot pursuant to 28 U.S.C. § 1915(c)(2)(B)(ii) (directing the Court to dismiss at any time a claim upon which relief may not be granted).

    **4.**    **The Amended Complaint Fails To State A Claim Upon Which Relief Can Be Granted**

        **a.**  **Freedom of Information Act; Equal Protection; Due Process; First Amendment; Privacy**

Plaintiff's contention, that the defendants interfered with his rights under the state Freedom of Information Act ("FOI"), Conn. Gen. Stat. § 1-200 et seq., to obtain free copies from his inmate master file, does not state a constitutional claim.  The FOI Act is a state statute.  An alleged failure to comply with a state law does not state a violation constitutional rights.  Baker v. McCollan, 443 U.S. 137, 146, 99 S. Ct. 2689, 61 L.Ed.2d  433 (1979); Bolden v. Alston, 810 F.3d 353, 358 (2nd Cir. 1987) cert. denied 484 U.S. 896 (1987).  Moreover, plaintiff has no constitutionally protected right to free photocopying services.  Soto v. Meachum, 1991 U.S. Dist. LEXIS 14824 (D. Conn. 1991) citing Wanniger v. Davenport, 697 F.2d 992 (11th Cir. 1983); Johnson v. Parke, 642 F.2d 377 (10th Cir. 1981); Duggar v. Coughlin, 613 F. Supp. 849 (S.D.N.Y. 1985) (inmate's right to access to the courts is not infringed by reasonable charges for copying services).  An inmate's right to access to the courts may be balanced against the state's legitimate budgetary concerns.  Gittens v. Sullivan, 679 F. Supp. 119, 122 (S.D.N.Y. 1987) aff'd

<u>per curiam</u> 848 F.2d 389 (2nd Cir. 1988).  "Given the State's legitimate budgetary concerns …

the court cannot find that the defendants' policy of charging a minimal price for photocopies

unjustifiably obstructs plaintiff's right of access [to the courts]."  <u>Soto v. Meachum</u>, <u>supra</u>.

Accordingly, inmate civil rights lawsuits based on alleged Freedom of Information type

violations are routinely dismissed.  <u>See</u>, <u>e.g.</u>, <u>Leitzscey v. Coombe</u>, 998 F. Supp. 282, 290

(W.D.N.Y. 1998); <u>Webb v. Ashburn</u>, 1997 U.S. Dist. LEXIS 2848 (S.D.N.Y. 1997); <u>Odom v.</u>

<u>Keane</u>, 1996 U.S. Dist. LEXIS 17543 (S.D.N.Y. 1996); <u>Daniels v. Walker</u>, 1995 U.S. Dist.

LEXIS 2459 (N.D.N.Y. 1995); <u>Mamarella v. County of Westchester</u>, 898 F. Supp. 236, 238 n. 4

(S.D.N.Y. 1995).

Charging inmates 25 cents per page for FOI requests does not constitute a violation of the

FOI Act.  Under the FOI, state agencies are authorized to charge individuals 25 cents per page

for photocopies.  Def. Statement, para. 13.  This is not a DOC rule created by the defendants.  It

is a state-wide rule for all persons.  An exception is made for indigent individuals, but the statute

does not define indigency.  Def. Statement, para. 13.  "Indigent" means "Experiencing want or

need; impoverished.  See Synonyms at poor. 2. Archaic, Lacking or deficient.  A needy or

destitute person."  American Heritage Dictionary (Fourth Edition, 2000).  In view of this

common meaning, the DOC is correct in refusing to consider inmates as indigent for the

purposes of FOI requests.  All of an inmate's basic needs are provided for by the State, including

food, clothing, shelter and medical care.  Def. Statement, para. 20.  Indeed, the federal poverty

rate if $9,310.00 per year. Def. Statement para. 18.  The costs for incarceration per inmate is

$26,600.00 per year. Def. Statement para. 19.  The FOI does not define indigent status, nor does

it prescribe how agencies are to determine indigency.  All it requires is that agencies be

objective, fair, reasonable and not discriminatory.  <u>See</u>, <u>In re Erin Boggs</u>, FIC 2002-297

(5/28/03); Attachment A.  The DOC uses the federal poverty rate for calculating indigency for all requestors.  See DOC FOI request form, Attachment B.  Accordingly, the State is correct in not providing free copies to inmates under the FOI indigency allowance because they are not indigent for the purposes of this rule.  It does provide free copies of legal materials to inmates who have less than $5.00 in their inmate accounts for 90 days or more, but this case does not concern legal materials.

This construction does not violate plaintiff's equal protection rights.  It is by now well settled that the constitutional guarantee of equal protection does not forbid all classifications, but rather "keeps governmental decision makers from treating differently persons who are in all respects alike."  Nordlinger v. Hahn, 501 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992).  Accordingly, unless the fee requirements burden a fundamental right or draw distinctions based on a suspect classification, the court will uphold their validity if they are rationally related to a legitimate governmental interest.  See, City of New Orleans v. Dukes, 427 U.S. 297, 303, 98 S.Ct. 2513, 49 L.Ed.2d 511 (1976).  The rational relation test is applicable in this case.  In Nicholas v. Tucker, 114 F.3d 17 (2nd Cir. 1997) it was held that the filing fees provisions of the Litigation Reform Act (PLRA) of 1996 were subject to a rational relation test only because the filing fees do not unconstitutionally burden an indigent inmates' First Amendment based rights of meaningful access to the courts or right to petition the courts for redress and because inmates are not in a suspect class such that a more exacting scrutiny is required.  Indeed, the court observed that "prisoners are not situated similarly to non-incarcerated persons since their rights are necessarily limited because of their incarceration, [and] all of their essential needs, such as food, shelter, clothing and medical needs are provided by the state." Id at 20 (citations and quotations omitted).  The same circumstances exist in this case.  Consequently, the same rational

relation test is applicable here. In Nicholas v. Tucker, it was found that the filing fee requirements in the PLRA were constitutional under a rational relation test. The same result should follow in this case.

As in Nicholas v. Tucker, the requirement tested in this case, that inmates pay for photocopies involved in their FOI requests, clearly furthers a legitimate state interest: the state's interest in budgetary concerns. In this regard, it should be noted that the fee was not created by the DOC. It is a state-wide rule applicable to all state and local agencies subject to the FOI. The fee schedule is obviously and reasonably related to the service provided and assists agencies to pay for staff and equipment necessary to administer the law, with the fee paid for by the users of the service in the same way that licensing and registration fees and tolls and other state fees help pay for the administrative expenses in a variety of state programs. Fees used to defray administrative expenses are permissible, but only to the extent necessary for that purpose. See, Eastern Conn. Citizens Action Group v. Powers, 723 F.2d 1050 1056 (2nd Cir. 1983). We urge this court to rule in support of the instant fee, particularly in view of the fact that there is no fee for viewing documents and there is no fee for copies of legal materials for inmates with less than $5.00 in their inmate accounts for more than 90 days. It is a reasonable amount rationally related to defraying the administrative expense involved and it is applied in a way which treats persons similarly situated in an equal manner. That plaintiff may need to choose between purchasing FOI copies, or other items of personal interest from his budget, does not create a constitutional defect. It merely places the prisoner in a position similar to that faced by those whose basic costs of living are not paid by the State. Nicholas v. Tucker, supra at 21; accord, Lebron v. Armstrong, 289 F.Supp. 2d 56, 60 (D.Conn. 2003).

Nor does this rule violate any of plaintiff's procedure due process rights. To come under the procedure due process protections, a prisoner must identify a protected liberty interest. Green v. Armstrong, 1999 U.S. App. LEXIS 20207 (2nd Cir. 1999) citing Sandin v. O'Connor, 515 U.S. 472, 484-85, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). In Sandin, the Supreme Court held that constitutional liberty interests in prisoner cases will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. Id at 484. No liberty interests are implicated here. The rule applies evenly to all inmates, and it is unrelated to his confinement conditions. Also, persons disagreeing with agency decisions under the FOI Act can appeal to the FOI Commission. Conn. Gen. Stat. § 1-206. Such post-deprivation state remedies satisfy procedural due process clause rights against unauthorized actions. See Davis v. Guarino, 2002 U.S. App. LEXIS 25864 (2nd Cir. 2004) citing Hellenic Am. Neighborhood Action Comm. V. City of N.Y., 101 F.3d 877, 880-81 (2nd Cir. 1996); Crisanti v. Dumas, 204 U.S. LEXIS 821 (D. Conn. 2004).

Even where procedural due process rights may not apply, the Constitution provides substantive protection under the Due Process Clause. Beatham v. Manson, 369 F.Supp. 783, 791 (D.Conn. 1973). In the absence of state action impinging on a fundamental right, as in this case, substantive due process jurisprudence merely requires a reasonable relation to a legitimate state interest. Washington v. Glucksberg, 521 U.S. 702, 721-22, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1977). The court merely inquires as to whether the challenged distinction was decided arbitrarily or capriciously. Beatham v. Manson, 369 F.Supp. 783, 788 (D.Conn. 1973). For the same reasons articulated above with respect to the Equal Protection rational relation test, this rule

passes the due process reasonable relation test. "State created rights pertaining to…freedom of information requests do not warrant the protection of substantive due process under the federal constitution." Dickman v. Mangiaracina, 1999 U.S. App. LEXIS 25050 (2nd Cir. 1999) citing McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994); Regents of Univ. of Mich. v. Ewing, 474 U.S. 214, 229, 88 L.Ed. 2d 523, 106 S.Ct. 507 (1985) and Charles v. Baesler, 910 F.2d 1349, 1353 (6th Cir. 1990).

Nor are there any privacy rights visible in this case.  Plaintiff contends that the case concerns his right to privacy concerning personal information. Am. Complaint, p. 6.  He does not indicate what personal information is involved, who invaded it, or when.  Nor can he.  No privacy rights are involved in this case.  "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Price v. Johnson, 334 U.S. 266, 285, 68 S.Ct. 1049, 92 L.Ed.1346 (1948).  Regarding the right of privacy implicated by government searches and seizures, the United States Supreme Court has held that the right "in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." Hudson v. Palmer, 468 U.S. 517, 527-28, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)  In curtailing certain rights of inmates, the United States Supreme Court has recognized that the very tense and potentially explosive nature of correctional institutions poses a constant threat to both inmates and correctional personnel alike.  See, Jones v. North Carolina Prisoners' Union, 433 U.S. 119, 132, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977).  Further, "central to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves." Pell v. Procunier, 417 U.S. 817, 823, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974).  Consequently the DOC can conduct

body cavity searches on inmates. Bell v. Wolfish, 441 U.S. 520, 558-60, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). It can collect DNA. Roe v. Marcotte, 193 F.3d 72 (2nd Cir. 1999). That the DOC collects and maintains records on the plaintiff is necessary and consistent with his status as an incarcerated inmate and necessary for the security of the facility, staff and inmates.

### b.  Actual Injury to Access to Court

In Lewis v. Casey, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), the U.S. Supreme Court required states to provide indigent inmates with the tools they need "in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Smith v. Armstrong, 968 F. Supp. 40, 47 (D. Conn. 1996) quoting Lewis v. Casey, supra at 355. The Supreme Court has specifically disclaimed any requirement that inmates have sufficient resources to discover grievances or litigate effectively once their claims are brought before the court. Lebron v. Armstrong, 289 F. Supp. 2d 56, 60 (D. Conn. 2003).

The State has a public defender service and Inmate Legal Assistance to Prisoners Program which provides access to court for indigent inmates in criminal and civil matters. See, Conn. Gen. Stat. § 51-289 et seq. (Public Defenders); Conn. Gen. Stat. § 18-81, DOC Directive 10.3, Attachment C (Legal Assistance). The DOC waives all photocopy fees for indigent inmates for legal materials, which includes documents relating to a pending legal action involving the inmate. Def. Statement, paras. 14, 15.

In the instant case, plaintiff's request did not involve a pending legal action. It involved an FOI request. Accordingly, it did not involve any access to court rights privileged by the U.S. Constitution.

Moreover, in order to establish an access to court claim, a plaintiff must show actual injury. Lewis v. Casey, supra at 349. He must demonstrate more than inconvenience; he must establish some inability to bring a claim before the court, Smith v. Armstrong, supra at 48-49, or a denial of a legal claim in a qualified case. Newman v. Holder, 101 F. Supp. 2d 103, 107 (E.D.N.Y. 2000); Lebron v. Armstrong, supra. Plaintiff has failed to prove such an actual injury in this case. Indeed it would be difficult for plaintiff to prove harm to his litigation in light of the volume of his output evident in this case, as well as in his other pending or recent litigation. See, Fernandez v. Armstrong, Civ. No. 3:03CV583 (JCH)(HBF); Fernandez v. Armstrong, Civ. No. 3:02CV2252 (CFD)(WIG); Fernandez v. Warden, No. CV-02-0469955-S; Fernandez v. Warden, No. CV-02-0470330-S; Page, Hiramrzdn and Fernandez v. Armstrong, No. CV-02-0470445-S; Fernandez v. Warden, No. CV-03-0003988-S; Fernandez v. Warden, No. CV-03-0004294-S; and Fernandez v. Warden, No. CV-03-0475502-S.

In the instant case, plaintiff complains about a rule without demonstrating actual injury to litigation in a qualified case. Accordingly, summary judgment should enter for the defendants.

### c. Grievance Rights

Plaintiff also complains that prison officials deliberately ignored or obstructed his grievances. Am. Complaint, pp. 14, 28, 31, 40, 41. To whatever extent plaintiff has alleged interference with his grievance filings, and to whatever extent that the Court deems that such an allegation states a claim, the defendants do not claim he failed to exhaust his prison administrative remedies in this case. Accordingly, plaintiff has no "actual injury" and judgment should enter for defendants on this point as well. See Lopez v. Smiley, 2003 U.S. Dist. 16724 (D. Conn. 2003) citing Graham v. Henderson, 89 F.3d 75, 80 (2nd Cir. 1996) and Lewis v. Casey, supra. Moreover, he filed a multitude of grievances, which were ruled upon. See Def. Statement, para. 21.

### d. Failure to Promulgate Directives

Plaintiff accuses the defendants Halleran, Hannah, Hall, Alves, Bartholomew, Rodriguez and Ahmed of failing to promulgate DOC Directives inserting mandatory language giving him unspecified rights creating liberty interests. Am. Complaint, p. 60. This allegation spells out no known cause of action as plaintiff has no right to require any defendant to promulgate directives. Moreover, the insertion of mandatory language in directives does not create liberty interests. See Sandin v. Conner, 515 U.S. 472, 483, 115 S. Ct. 2295, 132 L.Ed.2d 418 (1995). Accordingly, we urge the Court to render judgment for defendants on this point as well.

### e. Eighth Amendment

Plaintiff also alleges that he had only 16 cents in his inmate account when he was deprived of copies, and that this constituted a violation of the Eighth Amendment protection against cruel and unusual punishment. Am. Complaint, p. 55.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishment" U.S. Const. Amend. VIII, and applies to states through the Due Process Clause of the Fourteenth Amendment. See Robinson v. California, 370 U.S. 660, 666-67, 82 S. Ct. 1417, 8 L.Ed.2d 758 (1962). To prove a violation of the Eighth Amendment, an inmate must show (1) that the deprivation alleged is "objectively sufficiently serious" such that the plaintiff was denied "the minimal civilized measure of life's necessities" and (2) that the defendants officially possessed a "sufficiently culpable state of mind" associated with "the necessary and wanton infliction of pain." Trammell v. Keane, 338 F.3d 155, 162 (2nd Cir. 2003) citing Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); Gaston v. Coughlin, 249 F.3d 156, 164 (2nd Cir. 2001). In prison condition cases, the state of mind requirement is one of deliberate indifference to inmate health or safety. The instant case shows no violation of rights, let alone deliberate indifference to his health or safety.

**f.  Other Claims**

Plaintiff makes many other legal claims in his 66 pages of Amended Complaint, but they appear to be repetitive of the issues addressed above.  If any other legal grounds for relief are spelled out, the defendants do not understand the nature of the complaints.  Federal Rule of Civil Procedure 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  F.R.Civ.P. 8(a)(2).  The rule also requires that "each averment of a pleading shall be simple, concise, and direct."  F.R.Civ.P. 8(e)(1).  Under the rules' liberal pleading standards, a plaintiff must disclose sufficient information to permit the defendant "to have a fail understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery."  Ricciuti v. New York City Transit Auth., 941 F.2d 119, 123 (2nd Cir. 1991).  "Dismissal … is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised."  Salahuddin v. Cuomo, 861 F.2d 40, 42 (2nd Cir. 1988).

Complaints such as the instant one "which ramble, which needlessly speculate, accuse, and condemn, and which contain circuitous diatribes far removed from the heart of the claim" do not fairly apprise either the Court or the defendants of the nature of the claim and therefore should be dismissed.  Prezzi v. Berzak, 57 F.R.D. 149, 151 (S.D.N.Y. 1972); see Karlinsky v. New York Racing Association, 52 F.R.D. 40, 43 (S.D.N.Y. 1971); cf. Prezzi v. Schelter, 469 F.2d 691, 692 (2nd Cir. 1972), cert. denied, 411 U.S. 935 (1973) ("[S]ince [the complaint] contained a labyrinthian prolixity of unrelated and vituperative charges that defied comprehension it failed to comply with the requirement of Rule 8 …"); Cunningham v. United States, Civ. No. N-87-567 (WWE) (Ruling on Motion to Dismiss, August 26, 1988) Attachment D.

5.     **The Plaintiff Has Failed To Demonstrate Personal Participation Or Responsibility**

To prove a claim under 42 U.S.C. § 1983, the plaintiff must show that the defendants were personally involved in the alleged wrongdoing or contributed in some way to causing plaintiff's alleged injuries.  See Poe v. Leonard, 282 F.3d 123, 140 (2nd Cir. 2002); Wright v. Smith, 21 F.3d 496, 501 (2nd Cir. 1994).  In this case the plaintiff makes no allegation against the defendant Armstrong, and his claims against the defendants Rinaldi, Coyle, Hall, Hannah and Cornacchia are vague, or concern alleged notifications after the fact, or concern matters which do not state a claim upon which relief can be granted.  Accordingly, we urge the Court to render summary judgment in favor of these defendants, and any others not found to have participated in any alleged constitutional deprivation, for lack of personal participation or responsibility.

6.     **The Defendants Are Protected By Their Qualified Immunity**

The defendants in this case, by virtue of their status as public officials who must be allowed to do their jobs in good faith without fear of being liable for damages each time they make a decision on behalf of the State, are clothed with qualified immunity in this case.  Harlow v. Fitzgerald, 457 U.S. 800, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982).

The Supreme Court has held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  Harlow v. Fitzgerald, supra, at 818.  In order for the immunity to be available, the public official or employee must have acted under an objectively reasonable belief that his actions were lawful.  Gomez v. Toledo, 446 U.S. 635, 100 S. Ct. 1920, 64 L.Ed.2d 572 (1980); Eng v. Coughlin, 858 F.2d 889, 895 (2nd Cir. 1988).

While the issues of qualified immunity and privilege ordinarily involve issues of fact which need to be affirmatively pleaded, the Supreme Court has sanctioned the final resolution of civil rights cases on qualified immunity grounds on motion for summary judgment in appropriate cases.  See Harlow v. Fitzgerald, supra; see also, Cartier v. Lussier, 955 F.2d 841 (2nd Cir. 1992); Magnotti v. Kuntz, 918 F.2d 364 (2nd Cir. 1990).  In the instant case, the Complaint shows no grounds upon which a constitutional claim can stand under the facts alleged.  Schecter v. Comptroller, City of New York, 79 F.3d 265 (2nd Cir. 1996); Mozzochi v. Borden, 959 F.2d 1174, 1178 (2nd Cir. 1992).  Even if the law was clearly established, under the circumstances alleged, the facts do not support the sufficiently culpable state of mind necessary to support liability.  Thus, the facts alleged demonstrate that it was objectively reasonable for the officials to believe that their actions did not violate those rights.  Bliveira v. Mayer, 23 F.3d 642, 648-49 (2nd Cir. 1994).  The plaintiff's allegations should not suffice to subject these governmental officials to the costs of trial.  Harlow, supra, at 817-18.  It follows then, that the public officials in this case should be shielded from any personal liability.  This case should, thus, be dismissed with prejudice.

Should any portion of the Complaint survive the Motion for Summary Judgment currently under consideration, then we respectfully reserve the right to prove the defense at trial.

**7.    The Court Should Decline To Accept Jurisdiction Over Any State Law Claims In This Case**

The District Court may decline to exercise supplemental jurisdiction over state law claims in a case when it has dismissed all claims over which it has original jurisdiction, such as the § 1983 claims raised in this case.  See 28 U.S.C. § 1367(c)(3).  Where federal claims are dismissed before trial, the state claims should be dismissed as well.  United Mine Workers v.

<u>Gibbs</u>, 383 U.S. 715, 86 S. Ct. 1130, 16 L.Ed.2d 218 (1966); <u>Baylis v. Marriott Corp.</u>, 843 F.2d 658, 665 (2nd Cir. 1988).

The federal claims in this case should be resolved in favor of the defendants.  If that occurs, then we urge the Court to decline supplemental jurisdiction over the state law claims in this case, if any.

## <u>CONCLUSION</u>

For all of the foregoing reasons, we urge the Court to render summary judgment for the defendants, and dismiss the Amended Complaint accordingly.

DEFENDANTS
Monica Rinaldi, et al.

RICHARD BLUMENTHAL
ATTORNEY GENERAL


BY:  <u>/s/</u>_____
        Robert F. Vacchelli
        Assistant Attorney General
        110 Sherman Street
        Hartford, CT  06105
        Federal Bar #ct05222
        E-Mail:  robert.vacchelli@po.state.ct.us
        Tel.: (860) 808-5450
        Fax: (860) 808-5591

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed to the following on this 25th day

of May, 2004:

      Luis Fernandez, Inmate No. 279900
      MacDougall-Walker Correctional Institution
      1153 East Street South
      Suffield, CT  06080

                     /s/_____
                     Robert F. Vacchelli
                     Assistant Attorney General