

Ex. A

# Administrative Directives Revision Form
## Connecticut Department of Correction

CN 1305
Rev. 9-25-91

| Number | 4.4 | Title | Access to Inmate Information |

**Revisions appear on:**

| Page | Section | Page | Section |
|------|---------|------|---------|
| | | | |
| | | | |
| | | | |
| | | | |

**Summary of revisions:**

Section 5 was modified to direct all questions regarding disclosure to the Unit Administrator, not Central Records.

Section 5(D) was added regarding third party health records, inmates under age 18 and HIV testing information regarding inmates under age 18.

Section 5 E, F and G explain disclosure to the Warden, Classification personnel and the Commissioner.

Section 5(H) was added to refer to additional disclosure and the CN 4401, Authorization for Release.

Section 5(I) was added with regard to inmate workers in proximity to health records.

**Revisions are:** ☐ New directive   ☑ Modification   ☐ Recision

**Approved** [signature]   2/20/01

| State of Connecticut<br>Department of Correction<br>ADMINISTRATIVE<br>DIRECTIVE | DIRECTIVE NUMBER<br>4.4 | EFFECTIVE DATE<br>March 9, 2001 | PAGE 1 OF<br>6 |
|---|---|---|---|
| | SUPERSEDES:<br>Access to Inmate Information - 9/3/96 | | |
| APPROVED BY<br>[signature] 2/20/01 | TITLE:<br>Access to Inmate Information | | |

1. **Policy.** Access to inmate information produced, gathered, and stored by the Department of Correction may be granted in accordance with policies, laws and regulations regarding the confidentiality of such information.

2. **Authority and Reference.**

    A. Connecticut General Statutes, Sections 1-19, 1-20b, 18-81, 19a-565, 53a-70, 53a-70a, 53a-71, 53a-72a, 53a-72b, 53a-73a and Record of Arrest as Public Record 54-142a through 54-142p.
    B. Connecticut General Statutes, Chapter 899.
    C. CFR, Title 42.
    D. "Communications Terminal User's Agreement," between the Connecticut Department of Public Safety and the Department of Correction, 1989.
    E. American Correctional Association, Standards for Adult Correctional Institutions, Third Edition, January 1990, Standards 3-4020, 3-4068, 3-4092, 3-4095, 3-4096, 3-4098 and 3-4099.
    F. American Correctional Association, Standards for Adult Local Detention Facilities, Third Edition, March 1991, Standards 3-ALDF-1C-24, 3-ALDF-1E-01, 3-ALDF-1E-05, 3-ALDF-1E-06, 3-ALDF-1F-02 and 3-ALDF-1F-03.
    G. American Correctional Association, Standards for the Administration of Correctional Agencies, Second Edition, April 1993, Standards 2-CO-1E-06 through 2-CO-1E 08, 2-CO-1F-01, 2-CO-1F-06 and 2-CO-1F-07.
    H. Administrative Directives 1.4, Cooperation with Community and Governmental Organizations; 1.7, Research; 3.10, Fees, Reimbursements and Donations; 4.3, Court Processes; and 8.11, Human Immunodeficiency Virus Infection.

3. **Definitions.** For the purposes stated therein, the following definitions apply:

    A. **Conviction Information.** Criminal history record information which has not been erased, as provided in Connecticut General Statutes, Section 54-142g, and which discloses that a person has pleaded guilty or nolo contendere to, or was convicted of, any criminal offense, and the terms of the sentence.
    B. **Criminal History Record Information.** Court records and information compiled by criminal justice agencies for purposes of identifying an inmate and of maintaining notations of arrests, releases, detentions, including pleas, trials, sentences, appeals, incarcerations, correctional supervision (classification, disciplinary history, etc.), paroles and releases; but not including intelligence, presentence investigation, investigative information.
    C. **Criminal Justice Agency.** Any court with criminal jurisdiction, the Department of Correction, Department of Public Safety, the Department of Motor Vehicles, or any other governmental agency

material shall be temporarily removed from the file until the requested access is completed. Each Unit Administrator will determine a time and place during normal business hours where this review may take place and designate staff who will remain in the area during the review and ensure that no material is removed from the inmate master file. The inmate or the inmate's attorney may view Criminal History Information, Current Offender Information, Inmate Personal Data, or Non-Conviction Information contained in the master file. This information may include, mittimuses, classification actions, program reports and evaluations, time sheets, disciplinary reports and work reports.

B.  Unavailable Material. The inmate shall not have access to any documents or reports which would breach a legally confidential relationship or jeopardizes the safety of the public, staff or any inmate, or jeopardizes the security or orderly operation of the facility, or for which non-disclosure is otherwise authorized or required.

C.  Copies. An inmate may receive copies of any available information. Inmates receiving copies of available information shall be charged fees in accordance with Administrative Directive 3.10, Fees, Reimbursements and Donations.

D.  Medical and Psychiatric Information. Medical and psychiatric information shall be included in Inmate Personal Data. An inmate request for release of such information shall be reviewed by the local Health Services Unit to determine if the information jeopardizes the safety of the individual or other. If disclosure is refused, the Health Services unit shall inform the inmate of the reason for the refusal and the avenue of appeal.

   1. Third Party Health Records. The contract provider's health services staff shall ensure that an inmate request for a part of the health record that has been created by providers other than Department of Correction staff is specified on the Authorization for Release of Information form.
   2. Inmates Under 18 Years of Age. Written authorization, signed by an authorized representative, shall be required for the release of the health record of an inmate under 18 years of age with the exception of Section 8(D)(3) below.
   3. HIV Testing Information Regarding Inmates Under 18 Years of Age. An inmate, who is under the age of 18 years old, and has requested testing, examination or treatment for HIV and has requested that the inmate's parent or guardian not be informed, and the physician believes that the inmate would not submit to testing, examination or treatment if the parent or guardian were informed, and the physician has documented such in the health record, a minor shall have the right to authorize the release of only that personal health information which is related to testing for HIV infection or to the examination and/or treatment for HIV infection.

E.  Disclosure to Warden/Unit Administrator. The responsible contract provider's health authority(s) shall provide the Warden with relevant information concerning an inmate's medical and mental health management, security and ability to participate in

    A.    <u>Conviction Information</u>. The public, including the press, may be allowed to receive Conviction Information.

    B.    <u>Arrest Information</u>. The public, including the press, may be allowed to receive arrest information regarding any person other than a juvenile. Information contained on the RT80 screen, Public Information Disclosure, with the exception of non-conviction information, may be disclosed.

    C.    <u>Additional Information</u>. A request for any additional information shall be referred to the Unit Administrator who shall review and consult with the Department's Public Information Officer to determine if that information may be released to the requestor and if the inmate's authorization is necessary. If necessary, an inmate may authorize the release of information utilizing Release of Information form, CN 4401, which shall be maintained as a permanent part of the inmate's master file.

7. <u>Disclosure to Other Criminal Justice Agencies</u>. Criminal History Record Information, Current Offender Information, and Inmate Personal Data shall be available to other criminal justice agencies for: (1) screening applicants for employment; (2) commencement of prosecution, determination of pretrial or post-trial release or detention, the adjudication of criminal proceedings, or the preparation of a presentence report; (3) supervision by a criminal justice agency of an individual who has been committed to the custody of that agency; (4) the investigation of an individual who has already been arrested or detained; (5) the development of investigative leads for particular criminal offenses, if access is limited to criminal justice officials with both a need to know and a right to have access to such information; (6) the alerting of an official or employee of a criminal justice agency that a particular individual may present a danger to that person's safety or for similar essential purposes; or (7) such other legitimate criminal justice purposes as the Commissioner deems appropriate.

8. <u>Disclosure to Non-Criminal Justice Government Agencies and Elected or Appointed Public Officials</u>. An employee of Non-Criminal Justice government agencies and elected or appointed public officials may have access to any available information providing it does not violate any policy, regulation or law, and it does not jeopardize the safety of the public, staff or inmate or the security of the facility. Any staff member receiving a request for inmate information from one of these sources must report that request to the Unit Administrator as per Administrative Directive 1.4, Cooperation with Community and Government Organizations.

9. <u>Disclosure for Research</u>. Any inmate information except Non-Conviction Information, Intelligence Information and Investigation Information, can be made available to qualified persons and organizations for research, evaluative and statistical purposes. Such persons or organizations shall be granted access under the provisions of Administrative Directive 1.7, Research. Whenever such information is made available, the identification component of the information shall be deleted.



# Authorization for Release of Information

## Connecticut Department of Correction

CN 4401
10-1-96

| Inmate name | | | | | | | | Date of birth |
|---|---|---|---|---|---|---|---|---|
| Inmate no. | | Race  B  W  H  O | | | Sex  M  F | | | Soc. sec. no. |

I hereby authorize the State of Connecticut, Department of Correction and its staff at the _____

_____ **To *obtain* the following information from** _____
(initial)

_____ **To *reveal* the following information to** _____
(initial)

    _____ Date(s) of admission and/or discharge.
    (initial)

    _____ Pertinent medical and/or psychiatric information relevant to my diagnosis and/or
    (initial) treatment, including diagnosis.

    _____ Alcohol and/or drug abuse information.
    (initial)

    _____ Other information (be specific) _____
    (initial)

**Release of information relating to an HIV diagnosis**

_____ I may withdraw this consent at any time prior to the release of pertinent medical and/or
(initial) psychiatric information relevant to a diagnosis of HIV.

"This information has been disclosed to you from records whose confidentiality is protected by state law. State law prohibits you from making any further disclosure of it without the specific written consent of the person to whom it pertains, or as otherwise permitted by said law. A general authorization for the release of medical or other information is *not* sufficient for this purpose." C.G.S. 19a-565

The specific purpose of this request:

I may withdraw my consent at any time prior to the release of the indicated information. My consent, if not withdrawn, will expire on _____ or 90 days after I have signed this form.

Return to (facility stamp):

_____
Requester signature (and date)

_____
Witness signature (and date)

_____
Parent or guardian signature, if requester is a minor (and date)



# Administrative Directives Revision Form
## Connecticut Department of Correction

CN 1305
Rev. 9-25-91

| Number | 2.6 | Title | Employee Discipline |

| Revisions appear on: | Page | Section | Page | Section |
|---|---|---|---|---|
| | ___ | ___ | ___ | ___ |
| | ___ | ___ | ___ | ___ |
| | ___ | ___ | ___ | ___ |
| | ___ | ___ | ___ | ___ |

**Summary of revisions:**

Section 2(C) updated union contract dates.

Section 2(H) added reference.

Sections 3(B), (D) and (M) modified definitions.

Section 4 add Federal to last sentence.

Sections 6(B) and (C) were changed slightly.

Section 10(R) added Parole and Probation.

Sections 10(T) through (V) is new language.

Section 14(C) modified slightly.

Section 16 re-worded.

Section 17 minor change to first sentence.

Section 19 technical change.

Revisions are: [ ] New directive   [✓] Modification   [ ] Recision

Approved: [signature]   1/29/02

| State of Connecticut<br>Department of Correction<br>**ADMINISTRATIVE DIRECTIVE** | DIRECTIVE NUMBER<br>2.6 | EFFECTIVE DATE<br>February 8, 2002 | PAGE 1 OF<br>9 |
|---|---|---|---|
| APPROVED BY | SUPERSEDES: Employee Discipline - 1/15/99 | | |
| | TITLE: Employee Discipline | | |

1. **Policy.** The Department of Correction shall exercise consistent and equitable discipline in accordance with progressive disciplinary practices.

2. **Authority and Reference.**

    A. Connecticut General Statutes, Sections 5-201, 5-202, 5-240, 5-266(a) and 18-81.
    B. Regulations of Connecticut State Agencies, Sections 5-201-1 through 5-201-3, 5-240-1 through 5-240-3, 5-240-5a and 5-266(a)-1.
    C. Collective Bargaining Contracts:

        1. Administrative and Residual (P-5) Bargaining Unit, Article 14, June 1999.
        2. American Federation of State, County and Municipal Workers (NP-3) Bargaining Unit, Article 16, July 1999.
        3. American Federation of State, County and Municipal Workers (NP-4) Bargaining Unit, Article 13, July 1997.
        4. Connecticut Employees Union Independent (NP-2) Bargaining Unit, Article 17, July 1999.
        5. Connecticut State Employees Association (P-3B) Bargaining Unit, Article 15, July 1997.
        6. Connecticut State Employees Association (P-4) Bargaining Unit, Article 15, July 1994.
        7. New England Health Care Employees Union, District 1199 (NP-6) Bargaining Unit, Article 33, July 2001.
        8. New England Health Care Employees Union, District 1199 (P-1) Bargaining Unit, Article 33, July 2001.

    D. American Correctional Association, Standards for the Administration of Correctional Agencies, Second Edition, April 1993, 2-CO-1C-01 and 2-CO-1C-04.
    E. American Correctional Association, Standards for Adult Probation and Parole Field Services, Second Edition, March 1981, Standard 2-3032.
    F. American Correctional Association, Standards for Adult Correctional Institutions, Third Edition, January 1990, Standard 3-4048.
    G. American Correctional Association, Adult Local Detention Facilities, Third Edition, March 1991, 3-ALDF-1C-09, 3-ALDF-1C-15 and 3-ALDF-1F-01.
    H. Administrative Directives 1.10, Investigations; 2.1, Equal Employment Opportunity and Affirmative Action and 2.17, Employee Conduct.

3. **Definitions.** For the purposes stated herein, the following definitions apply:

| DIRECTIVE NO. 2.6 | EFFECTIVE DATE February 8, 2002 | PAGE 3 | OF 9 |
|---|---|---|---|
| TITLE | Employee Discipline | | |

5. **Pre-Disciplinary Resolution.** Informal discussions and formal counseling shall be used whenever practicable. Additional training may be considered if it appears the employee could benefit and performance is likely to improve. However, formal disciplinary action shall be taken when it is determined further training and counseling would not be effective or the incident is of such magnitude that formal discipline is required.

6. **Penalties.** In accordance with the principles of progressive discipline, the penalties shall include:

    A. **Oral or Written Reprimand.** An oral or written reprimand shall normally be used when a first offense warrants some form of disciplinary action. The purpose of reprimand shall be to correct the specific act or omission that is the subject of the reprimand and to place the employee on notice that continued misconduct may result in more severe discipline. An oral reprimand shall be documented in the employee's personnel file.

    B. **Suspension.** Suspension shall be imposed for a specific and serious breach of written rules for reasons which may include, but are not restricted to, misconduct, insubordination, or neglect of duty. A suspension may be warranted for a first offense which is a serious breach of rules or following the issuance of an oral or written reprimand.

    C. **Demotion.** A demotion should be considered when an employee, based on inefficiency, incompetence or misconduct, cannot carry out the duties and responsibilities of the assigned position yet may demonstrate satisfactory performance in a less demanding assignment. An unsatisfactory service rating may result in a demotion. A demotion shall not be made earlier than three (3) months after a permanent appointment.

    D. **Dismissal.** Dismissal is the most severe penalty in the employee disciplinary process and shall be reserved for situations when an employee has repeatedly demonstrated an inability to follow agency and/or unit directives, procedures or orders or when other forms of disciplinary action have been exhausted or for first offenses which threaten the security or integrity of the unit or conduct of such a serious nature that dismissal is warranted, including, but not limited to those offenses outlined in Section 10 of this Directive.

7. **Disciplinary Factors.** A Unit Administrator, in determining what disciplinary action to take, should consider the following:

    A. The employee's past work record including disciplinary history and years of service.
    B. The effect of the offense on the organization's efficient operation.
    C. The seriousness or type of the offense relative to the employee's duties and responsibilities within the organization including the possible impact on other employees.
    D. Any mitigating or aggravating circumstances surrounding the offense.
    E. The uniformity of enforcement.

| DIRECTIVE NO. 2.6 | EFFECTIVE DATE February 8, 2002 | PAGE 5 OF 9 |
|---|---|---|
| TITLE | Employee Discipline | |

  M. Possession of, use of and/or intoxication from alcohol or illegal drugs while on duty.
  N. Neglect of duty, or other employment related misconduct.
  O. Insubordination, including but not limited to failure to work overtime if directed to do so.
  P. Engaging in any activity which is detrimental to the best interests of the agency or of the state.
  Q. Violation of the code of ethics and conflict of interest law and policy.
  R. Inappropriate relationship with an inmate who is under the jurisdiction of the Department, Board of Parole or Probation as defined in Administrative Directive 2.17, Employee Conduct.
  S. Lying or providing false information regarding an incident.
  T. Falsification of documents.
  U. Failure to complete required security tours.
  V. Two (2) consecutive unsatisfactory service ratings.

11. **Off Duty Employee Misconduct**. An employee may be disciplined up to and including dismissal for off duty misconduct if the conduct affects the Department's relationship with the employee. Discipline may occur when the conduct affects the employee's ability to perform the job; other employees refuse to work with the employee or the Department is harmed, either directly or indirectly, as a result of the employee's conduct. The Department shall conduct its own investigation in such circumstances. The outcome of the Department's investigation shall not be dependent upon the finding of any criminal court concerning the employee's guilt.

12. **Standards for Disciplinary Proceedings**. Disciplinary action shall be taken in accordance with the applicable collective bargaining agreement. However, all disciplinary action shall be undertaken in accordance with the following principles:

  A. **Reasonable Work Rules**. The Department's directives and procedures shall be reasonably related to the orderly, efficient and safe operation of the Department's business.
  B. **Fair Application of Rules**. The Department shall apply its directives, procedures and orders fairly and without discrimination to all employees.
  C. **Fair Notice**. The Department shall provide the employee with information concerning probable or possible disciplinary consequences for the employee's conduct.
  D. **Investigation**. The Department, before disciplining an employee, shall conduct an appropriate investigation in accordance with Administrative Directive 1.10, Investigations, to determine whether the employee committed an offense as defined in Sections 8 through 11 of this Directive.
  E. **Sufficient Evidence**. The decision to initiate the disciplinary action shall be based upon substantial proof of employee act(s) or omission(s) in accordance with Administrative Directive 1.10, Investigations.
  F. **Just Penalty**. The degree of discipline imposed shall be related to the seriousness of the employee's offense and its impact upon the orderly, efficient and safe operation of the unit.

| DIRECTIVE NO. 2.6 | EFFECTIVE DATE February 8, 2002 | PAGE OF 7   9 |
|---|---|---|
| TITLE | Employee Discipline | |

the employee's right to have representation. However, representation shall be limited to those situations when the employee reasonably believes the conference shall result in disciplinary action. The employee may choose the union representative but cannot insist upon a specific representative who may not be available through no fault of the employer. The employee shall be permitted time before the conference to consult with the employee's representative. If a bargaining unit employee wishes to utilize a representative outside of the union, the employee shall obtain a waiver of union representation from the union.

D. **Employee Representative Functions**. The representative may reasonably assist the employee during the conference. However, a representative cannot attempt to transform the conference into an adversarial proceeding through unduly provocative questions or by the tone or manner of the representative's conduct. The employer has no duty to bargain with a representative.

15. **Leave of Absence Pending Investigation and/or Pre-Disciplinary Conference**. The appointing authority may place an employee on leave of absence with pay for up to 15 working days to permit an investigation and/or pre-disciplinary conference of alleged serious non-criminal misconduct which could constitute just cause for dismissal. Such leave shall only be utilized if the employee's presence at work could be harmful to the public; the welfare, health or safety of inmates; the employee or other state employees or state property. Following a decision to place the employee on such leave, the appointing authority shall provide written notice to the employee stating the reasons for the leave, the effective date of the leave and the duration of the leave which shall not exceed 15 days.

Any employee who is the subject of criminal charges which upon conviction would constitute just cause for dismissal may request a voluntary leave of absence without pay pending the disposition of the criminal charges. In the event the criminal charges are not disposed of during a one (1) year voluntary unpaid leave of absence, the employee may request an extension of that leave. The appropriate Division Head, in consultation with the Director of Human Resources may, pending disposition of criminal charges, the pendency of which would hamper the completion of an independent administrative investigation and which upon conviction of an employee would constitute just cause for dismissal, place the employee on leave of absence with or without pay for up to 30 days, depending on the collective bargaining agreement. Such leave shall only be used if the employee's presence at work could be harmful to the public, the welfare, health or safety of inmates, other state employees or state property. Following a decision to place the employee on such leave, the appointing authority shall provide written notice to the employee stating the reasons for the leave, the effective date of the leave and the duration of the leave, which shall not exceed 30 days. The leave may be extended for an additional 30 day period upon request of the appropriate Deputy Commissioner and the approval of the Commissioner based only on a showing that there are significant problems which prevent the completion of an independent administrative investigation of the underlying conduct. Any leave may be terminated by the Unit Administrator with a return to work order.

| DIRECTIVE NO. | EFFECTIVE DATE | PAGE OF |
| --- | --- | --- |
| 2.6 | February 8, 2002 | 9   9 |

TITLE: Employee Discipline

    B.    <u>Demotion</u>. The effective date of a demotion shall not be earlier than two (2) weeks from the date of the notice.

    C.    <u>Suspension</u>. The effective date of a suspension shall be at a time determined by the appointing authority, commencing after oral or written notice of the determination to impose a suspension, so long as any oral notice is followed by the written notice required by this Directive.

19.    <u>Termination During Working Test Period</u>. An employee terminated during an initial working test period may not appeal the dismissal through the grievance procedure, but may file a request in writing to the Director of Human Resources to seek reinstatement. A review shall be scheduled within 30 days of receipt by a three (3) member panel appointed by the Deputy Commissioner of Programs and Staff Development. The panel shall consist of a staff member from the Human Resources Unit at or above the level of Personnel Officer I, an Affirmative Action Unit representative and one (1) other supervisor. The panel shall submit its recommendation to the Director of Human Resources for final approval. The employee shall receive notification of the Department's decision within 14 days of receipt of the recommendation by the Director of Human Resources.

20.    <u>Exceptions</u>. Any exception to the procedures in this Administrative Directive shall require prior written approval from the Commissioner.