

Ex. C

| State of Connecticut<br>Department of Correction<br>**ADMINISTRATIVE DIRECTIVE** | DIRECTIVE NUMBER<br>2.17 | EFFECTIVE DATE<br>May 10, 2002 | PAGE 1 OF<br>5 |
|---|---|---|---|
| APPROVED BY [signature] 4/8/02 | SUPERSEDES:<br>Employee Conduct - 3/15/00 | | |
| | TITLE:<br>Employee Conduct | | |

1. **Policy.** Each employee of the Department of Correction shall engage in appropriate and ethical conduct while carrying out official duties and while engaged in off duty activities which directly reflect on the Department.

2. **Authority and Reference.**

   A. Connecticut General Statutes, Sections 1-80 through 1-89, 5-266a through 5-268, 18-81, 53a-65, 53a-71 and 53a-73a.
   B. American Correctional Association, Standards for Administration of Correctional Agencies, Second Edition, April 1993, Standards 2-CO-1C-01 and 2-CO-1C-04.
   C. American Correctional Association, Standards for Adult Correctional Institution, Third Edition, January 1990, Standards 3-4061 and 3-4067.
   D. American Correctional Association, Standards for Adult Local Detention Facilities, Third Edition, March 1991, Standards 3-ALDF-1A-21, 3-ALDF-1C-15 and 3-ALDF-1C-23.
   E. American Correctional Association, Standards for Adult for Probation and Parole Field Services, Third Edition, August 1998, Standard 3-3047.
   F. American Correctional Association, Standards for Correctional Training Academies, Standard 1-CTA-1C-01.
   G. Hatch Act, 5 USC, Sections 1501 through 1508.
   H. Administrative Directives 6.2, Facility Post Orders and Logs; 9.6, Inmate Grievances; and 10.7, Inmate Communication.

3. **Definition.** For the purposes stated herein, the following definition applies:

   **Immediate Family.** A spouse, parent or step parent, child or step child, grandparent or step grandparent, sibling or step sibling, grandchild or step grandchild.

4. **Employee Responsibility.** Each employee of the Department shall act in a professional, ethical and responsible manner.

   **Chain of Command.** Each Department employee shall become familiar with the tables of organization depicting the Department and Unit chain of command. Each employee shall show respect to any ranking member of the Department and shall obey any lawful order of a supervisor. An employee given an instruction or order which conflicts with a previous instruction or order shall inform the present supervisor of the conflict and follow the order as directed.

| DIRECTIVE NO. 2.17 | EFFECTIVE DATE May 10, 2002 | PAGE OF 2   5 |
|---|---|---|
| TITLE | Employee Conduct | |

5. **Standards of Conduct.**

   A. Each Department employee shall:

   1. Comply with all federal and state laws, regulations and/or statutes, Department and Unit Directives and lawful instructions/orders.
   2. Enforce all rules, regulations and policies of the Department as appropriate.
   3. Ensure that a safe, secure and sanitary work environment is maintained.
   4. Remain alert, aware of, and responsive to the surroundings at all times.
   5. Remain on assigned post until properly relieved and/or remain at worksite as required.
   6. Comply with official notices and roll call and other instructions.
   7. Meet all employee responsibilities for dependability.
   8. Report any arrest, or receipt of any summons received from a law enforcement agency or court, and subsequent disposition, including conviction, to an appropriate supervisor on or by the next scheduled work day following the arrest, but no later than 48 hours of the arrest or receipt of summons. This requirement shall not apply to summons received for minor traffic violations. An employee shall submit supporting documentation of arrest, receipt of summons or disposition. Any employee on extended leave shall report any arrest or receipt of summons, and subsequent disposition, including conviction, to the Unit Administrator within 48 hours.
   9. Inform the appropriate supervisor and the Human Resources Unit, in writing, of any change of address and/or telephone number within 48 hours.
   10. Report any condition or use of medication the employee is taking which may affect job performance or judgment to an appropriate supervisor.
   11. Report any medication brought into the worksite and maintain any personal property and medication in a secure manner.
   12. Act in a professional manner showing respect to other employees and the public.
   13. Respect and protect the rights of inmates.
   14. Maintain good stewardship of all state property and equipment.
   15. Maintain appropriate demeanor at all times.
   16. Be courteous and accommodating in all dealings with the public, to include telephone etiquette.
   17. Within no later than 48 hours report in writing to a supervisor when a friend or relative is or becomes incarcerated.
   18. Cooperate fully and truthfully in any inquiry or investigation conducted by the Department of Correction and any other law enforcement or regulatory agency.
   19. Appropriately file information as required by the State Ethics Commission.



CN 1305
Rev. 9-25-91

# Administrative Directives Revision Form
## Connecticut Department of Correction

| Number | 2.17 | Title | Employee Conduct |

| Revisions appear on: | Page | Section | Page | Section |
|---|---|---|---|---|
| | _____ | _____ | _____ | _____ |
| | _____ | _____ | _____ | _____ |
| | _____ | _____ | _____ | _____ |
| | _____ | _____ | _____ | _____ |
| | _____ | _____ | _____ | _____ |

**Summary of revisions:**

Section 5(B)(15)(c) removed the word inappropriate and references section 15(a).

Section 5(B) added (28) and (29) as prohibited behavior.

| Revisions are: | ☑ New directive | ☑ Modification | ☐ Recision |
| Approved | [signature]  4/8/02 | | |

20. Report immediately any threat, act of intimidation, harassment, physical or verbal abuse or assault to a supervisor.

B. The following behavior shall be strictly prohibited:

1. Any act that jeopardizes the security of the unit, health, safety, or welfare of the public, staff or inmates.
2. Excessive or unnecessary use of force.
3. Unauthorized possession of non-department issued firearms or other weapon while on duty or state property.
4. Convey unauthorized items into or out of a facility, or other correctional unit.
5. Sleeping or inattentiveness while on duty.
6. Unauthorized distractions while on duty, e.g., reading materials, radios or televisions.
7. Abuse of sick time, accrued leave or workers' compensation.
8. Report to work under the influence of alcohol or illicit drugs, or consume alcohol while on duty or while in uniform.
9. Enter ~~into~~ a correctional unit when off duty unless previously authorized.
10. Engage in abusive or obscene language, threats and/or intimidating behavior.
11. Engage in unprofessional or illegal behavior, both on and off duty, that could in any manner reflect negatively on the Department of Correction.
12. Engage in any activity, which would conflict with the proper discharge of or impair the independence of judgment in the performance of duty.
13. Engage in bartering, gambling or games of chance with inmates.
14. Engage in retaliation or reprisal against an inmate for engaging in activities that are protected by law or directive. Such protected activities include, but are not limited to: filing a grievance in accordance with Administrative Directive 9.6, Inmate Grievances; accessing courts; and engaging in privileged correspondence in accordance with Administrative Directive 10.7, Inmate Communication.
15. Engage in undue familiarity with inmates which includes, but shall not be limited to, the following:

    a. any sexual contact between a staff member and an inmate and/or person under the Department's supervision, or continuing criminal sanction (e.g., parole, probation);
    b. sexualizing a situation without physical touching such as partaking in activities involving suggestive or pornographic photographs, suggestive or explicit letters or behavior which provides sexual gratification;
    c. holding a position of supervisory or disciplinary authority and participating in sexual behaviors or undue familiarity with an inmate as defined in (a);

| DIRECTIVE NO. 2.17 | EFFECTIVE DATE May 10, 2002 | PAGE 4 | OF 5 |
|---|---|---|---|
| TITLE | Employee Conduct | | |

    d.    personal involvement in an inmate's private or family matters outside assigned professional duties;
    e.    performance of personal favors for inmates outside assigned professional duties;
    f.    discuss with an inmate any matter pertaining to the inmate's crime(s) or the crime(s) of other inmates (except as required pursuant to official business);
    g.    discuss with an inmate personal and/or business matters of other staff;
    h.    discuss security operations of a facility with an inmate;
    i.    inconsistently enforced facility rules to favor an inmate or group of inmates;
    j.    have personal work done by an inmate;
    k.    visit, correspond with or accept telephone calls from an inmate who is under the custody of the Department (except for an immediate family member **and** when authorized by the Facility Administrator);
    l.    house an inmate who is under the custody of the Department (e.g., while inmate is on furlough, community release, continuing criminal sanction, etc.), at the staff member's home (except for an immediate family member **and** when authorized by the Facility Administrator); and
    m.    enter into a personal or business agreement with an inmate, including, but not limited, to acting as a bail bondsman for an inmate.

16. Engage in behavior which is sexually, emotionally, or physically abusive toward the public, staff or inmates.
17. Unauthorized appropriation or use of any property belonging to the public, state or an inmate.
18. Release of any confidential information or unauthorized or inaccurate release of information, records, or documents.
19. Falsification, unauthorized alteration, or destruction of documents, log books, and other records, including job applications.
20. Use official position, uniform, identification or badge to gain any personal advantage or an advantage for another in any improper or unauthorized manner.
21. Engage in conduct that constitutes, or gives rise to, the appearance of a conflict of interest.
22. Unauthorized acceptance of any item or service for oneself or family members, including but not limited to, a gift, loan, political contribution, reward or promise of future employment.
23. Engage in any political activities, which conflict with state and federal laws to include the Hatch Act.
24. Failing to follow a lawful order.
25. Engaging in insubordination.
26. Failing to cooperate with a departmental investigation.
27. Lying or giving false testimony during the course of a departmental investigation.

Case 3:03-cv-00146-WWE   Document 35-3   Filed 06/17/2004   Page 7 of 16

| DIRECTIVE NO. | EFFECTIVE DATE | PAGE | OF |
|---|---|---|---|
| 2.17 | May 10, 2002 | 5 | 5 |
| TITLE | Employee Conduct | | |

      28. Intentionally withholding information necessary for the completion of an investigation.
      29. Failure to properly conduct tours and/or inmate counts.

6. <u>Supervision of Family Members</u>. A Department employee shall not be employed in any position that places the employee above or under the chain of command, direct or functional, of any immediate family member or cohabitant, nor shall the employee be placed above or under the chain of command, direct or functional, of any immediate family member of the employee's spouse or cohabitant. A relationship between family members who are not immediate family as defined in Section 3 of this Directive may preclude placement of an employee in a chain of command. Such relationship shall be evaluated by the appropriate Deputy Commissioner on a case by case basis. Any employee who becomes romantically linked to another in the chain of command, direct or functional, shall notify the Unit Administrator in writing in order to make assignments consistent with the principles noted above. Similar principles shall apply to the supervision of contract employees, and the awarding, or advocating the award, of a contract to related parties as noted above.

7. <u>Reporting Code Violations</u>. Each Department employee shall report to a supervisor or appropriate personnel any policy violation or breach of professional conduct involving the public, staff or inmates under the jurisdiction of the Department of Correction.

8. <u>Exceptions</u>. Any exception to the procedures in this Administrative Directive shall require prior written approval from the Commissioner.



Ex. D

| State of Connecticut<br>Department of Correction<br>**ADMINISTRATIVE DIRECTIVE**<br>APPROVED BY [signature] 7/23/99 | DIRECTIVE NUMBER<br>9.6 | EFFECTIVE DATE<br>August 16, 1999 | PAGE 1 OF<br>8 |
|---|---|---|---|
| | SUPERSEDES: Inmate Grievances - 8/3/98 | | |
| | TITLE: Inmate Grievances | | |

1. **Policy.** The Department of Correction shall provide a means for inmates to address grievances. The Inmate Grievance Procedure shall be an administrative remedy which enables the Department to resolve legitimate grievances in a timely manner, to identify individual and systemic problems, and to facilitate the accomplishment of its mission.

2. **Authority and Reference.**

   A. Connecticut General Statutes, Section 18-81.
   B. 42 United States Code 1997e.
   C. 28 Code of Federal Regulations 40.
   D. American Correctional Association, Standards for Adult Community Residential Services, Second Edition, August 1980, Standard 2-2154.
   E. American Correctional Association, Standards for Adult Probation and Parole Field Services, Second Edition, March 1981, Standard 2-3163.
   F. American Correctional Association, Standards for Adult Correctional Institutions, Third Edition, January 1990, Standard 3-4271.
   G. American Correctional Association, Standards for Adult Local Detention Facilities, Third Edition, March 1991, Standard 3-ALDF-3E-11.
   H. 1990 Americans with Disabilities Act.
   I. Administrative Directives 1.10, Investigations; 2.17, Employee Conduct; 6.10, Inmate Property; 6.14, Security Risk Group; 9.1, Population Management; 9.2, Inmate Classification; and 9.5, Code of Penal Discipline.

3. **Definitions.** For the purposes stated herein, the following definitions apply:

   A. **Abuse.** The filing of repetitive grievances addressing the same issue where sufficient time for response has not elapsed or where a valid response has been provided; the filing of an excessive number of grievances; the appeal of a grievance settled in the inmate's favor at a lower level; the filing of harassing grievances; or the intentional filing of emergency grievances which are not emergencies.
   B. **Emergency Grievance.** A grievance processed by expedited methods to resolve an issue which presents: (1) a threat of death or injury; (2) a threat of disruption of facility operations; or (3) a need for prompt disposition because the time is lapsing when meaningful action or decision is possible.
   C. **Grievance.** A written complaint filed by an inmate on the inmate's own behalf in accordance with the procedures stated herein.
   D. **Grievance Coordinator.** An employee of the unit designated to coordinate the Inmate Grievance Procedure.

  E. <u>Inmate</u>. A person in the custody of the Department of Correction to include those confined in a facility or under community supervision.

  F. <u>Unit</u>. An organizational component of the Department, including correctional institutions, correctional centers, detention centers, DWI units, community enforcement offices and the health services division.

  G. <u>Unit Administrator</u>. The person in charge of a unit specified in (F) above.

4. <u>Notice</u>.

  A. The Inmate Grievance Procedure shall be published in English and Spanish. Each inmate, direct contact employee and direct contact contractor shall be issued a written summary of the Inmate Grievance Procedure upon initial contact with the Department. An inmate whose primary language is Spanish shall receive a copy written in Spanish. Appropriate provision shall be made for those who do not read, speak or understand English and Spanish. Inmates who are impaired or disabled shall receive assistance as necessary.

  B. English and Spanish copies of the Inmate Grievance Procedure shall be available in each inmate library and shall be provided to an inmate upon request.

  C. An inmate shall receive oral instruction about the Inmate Grievance Procedure, filing of a grievance and obtaining grievance forms. This instruction shall encourage questions and take place as part of the orientation curriculum, not later than two (2) weeks after admission.

  D. Staff shall receive oral instruction regarding the Inmate Grievance Procedure during orientation training and upon assignment to a new unit.

  E. Upon transfer, an inmate shall be informed of the Inmate Grievance Procedure at the receiving unit.

5. <u>Access</u>. Each inmate in the Department's custody shall have access to the Inmate Grievance Procedure. Special provisions shall be made to ensure access for the impaired or disabled, illiterate or those with language barriers.

  A. Any inmate who needs assistance in using the Inmate Grievance Procedure shall receive assistance upon request.

  B. Access shall only be limited as a result of abuse of the Inmate Grievance Procedure in accordance with Section 19 below or failure to comply with the process.

6. <u>Grievable Matters</u>.

  A. <u>Grievable</u>. The following matters are grievable:

    1. The interpretation and application of policies, rules and procedures of the unit, division and Department.

    2. The existence or substance of policies, rules and procedures of the unit, division and Department in accordance with Section 13 below.

3. Individual employee and inmate actions including any denial of access of inmates to the Inmate Grievance Procedure other than as provided herein.
4. Formal or informal reprisal for use of or participation in the Inmate Grievance Procedure.
5. Any other matter relating to access to privileges, programs and services, conditions of care or supervision and living unit conditions within the authority of the Department of Correction, to include rights under the Americans with Disabilities Act, except as noted herein.
6. Property loss or damage.

B. **Non-Grievable**. The following matters are not grievable:

1. State and federal laws and regulations.
2. State and federal court decisions.
3. Actions pursuant to the Code of Penal Discipline, which are appealable through the disciplinary procedure provided in Administrative Directive 9.5., Code of Penal Discipline.
4. Classification decisions, which are appealable through the classification procedure provided in Administrative Directive 9.2, Inmate Classification.
5. The individual designation of an inmate as a Security Risk Group Member or a Security Risk Group Safety Threat Member in accordance with Administrative Directive 6.14, Security Risk Groups.
6. Health Services diagnosis or treatment.
7. Matters beyond the control of the Department, including parole decisions.

7. **Disposition and Remedy**. Grievances shall either be rejected, denied, upheld or disposed by mutual agreement. Grievances that are upheld shall be given an appropriate and meaningful remedy. Such remedies may include, but not be limited to:

A. Corrective action to rectify the matter being grieved.
B. Changes in written policy and procedures or in interpretation or application of written policies and procedures.
C. Enforcement of existing policy and procedure.
D. Development of policies and procedures pertaining to the grievance.

8. **Administrative Provisions**. Each Unit Administrator shall establish unit directives consistent with the Inmate Grievance Procedure and the type of unit, which shall include at a minimum:

A. The designation of a staff person, to be known as the Grievance Coordinator, whose scope of authority and responsibility shall be defined by the Unit Administrator.
B. Notification procedures to inmates of the name of the Grievance Coordinator.
C. Provision for adequate numbers of collection boxes at various unit locations for the deposit of grievances. Units shall provide locked boxes for depositing grievances.

D. Procedures for the regular and timely collection and appropriate logging of grievances.
E. Procedures for the prompt handling of all emergency grievances.
F. Procedures to assure that no employee or inmate shall participate in the resolution of a grievance in which the employee or inmate is allegedly involved.
G. Procedures to provide notice of and access to the Inmate Grievance Procedure for all inmates including the impaired, disabled, illiterate and those with language barriers.

9. **Informal Resolution.** An inmate shall attempt to seek informal resolution prior to filing an inmate grievance. Informal resolution includes personal contact with staff able to resolve the matter or utilization of the Inmate Request System. Access to the Inmate Request System shall be through the use of the Inmate Request Form, Attachment B. A clear statement of the problem and action requested should be written by the inmate and sent to the appropriate unit Department Head or employee. Inmate Request Forms shall be available in all units. Response to the inmate shall be made within 15 calendar days from receipt of the request.

10. **Filing a Grievance.** An inmate shall attempt to resolve a problem through the Inmate Request System prior to filing a grievance. The inmate shall attach the Inmate Request Form CN 9602, Attachment B, containing the appropriate staff member's response, to the Inmate Grievance Form which requirement may be waived for an emergency grievance. If the inmate was unable to obtain a blank Inmate Request Form, did not receive a timely response to the Inmate Request, or for a similar valid reason, the inmate shall include an explanation as to why the Inmate Request Form is not attached. A grievance may be rejected for failure to attempt informal resolution. A grievance shall be filed in accordance with the following provisions:

A. A grievance must be filed, in writing, on the Inmate Grievance Form CN 9601, Attachment A. Grievance forms shall be readily accessible to inmates.
B. The grievance must be filed by an inmate who is personally affected by the grievance subject and shall not be filed by one (1) inmate on behalf of another.
C. Each grievable matter shall be submitted on a separate Inmate Grievance Form.
D. The grievance and the action requested should be stated simply and coherently.
E. The length of the grievance shall be restricted to the space available on the face of the grievance form and one (1) additional 8 1/2 x 11 inch page.
F. The grievance shall be free of obscene or vulgar language or content.
G. The grievance must be filed within 30 days of the occurrence or discovery of the cause of the grievance, except for grievances regarding property, which must be filed within one (1) year of the discovery or within three (3) years of the occurrence.

H. A repetitive grievance may not be filed by the same inmate when a final response has been provided and there has been no change in any circumstances that would affect the response; or when the initial grievance is still in process.
The Inmate Grievance Procedure is an administrative remedy. Inmates contemplating litigation against the Department may be required by the courts to have exhausted this remedy before a suit may be filed.

11. <u>Rejection of Grievances</u>. Any grievance which does not meet the criteria specified in Section 6(A) or the procedural requirements of Section 10 of the Inmate Grievance Procedure may be rejected. Any grievance rejected at any level of the Inmate Grievance Procedure may be appealed to the next level. A grievance which does not comply with the procedures in the Inmate Grievance Procedure shall be returned to the grievant stating that the grievance is not in compliance and citing the specific procedural errors. Any grievance not in compliance with Section 10(G) cannot be corrected.

12. <u>Appeals</u>. A response to a grievance may be appealed to the next level as provided for in Sections 16 and 17. An appeal should be deposited in the Grievance Box or sent to the Grievance Coordinator.

    With the consent of the grievant, a reviewer may extend the time limit for a response up to 15 days using the Request for Time Extension Form, CN 9603, Attachment C. A grievant may request a time extension of up to 15 days to file an appeal by sending a written Inmate Request Form to the Grievance Coordinator. A request by the grievant may be granted at the discretion of the reviewer to whom the appeal is to be sent.

13. <u>Appropriate Review</u>. A grievance about a matter that is beyond the authority of lower level(s) of review may be sent by the lower level reviewer directly to the appropriate level of review. In such case the time limit(s) of the lower level(s) shall be combined with the time limit of the appropriate review level and the grievant shall be notified of the review process and of the time frame for response. If the grievance is upheld, the time necessary to implement the change(s) may exceed the time limit for review.

14. <u>Medical Grievances</u>. All health care related grievances shall be placed in a box designated for health services grievances and shall be processed by the designated Health Services Grievance Coordinator.

15. <u>Level 1 Review</u>. The Level 1 review shall be made by the Unit Administrator or ranking facility Health Services Administrator/Supervisor, as appropriate. The grievance shall be reviewed for compliance with the Inmate Grievance Procedure and investigated if the grievance is accepted. The response shall be in writing within 30 calendar days and shall include a statement of the remedy for a grievance that is upheld, or of the reason a grievance is denied or rejected. The appropriate administrator shall notify the inmate of the Level 1 disposition and shall include an appeal form and directions for appealing to Level 2.

16. **Level 2 Review**. An inmate may appeal a Level 1 action to Level 2 within five (5) calendar days of receipt of the decision. The Level 2 review shall be made by the Complex Warden, Community Enforcement Administrator or Complex Health Services Administrator, as appropriate. In cases in which a denial of reasonable accommodation under the Americans with Disabilities Act is being grieved, the appeal shall be filed with the Department Americans with Disabilities Act Coordinator. If a timely response to a Level 1 grievance is not received, an inmate may appeal to Level 2, one (1) day after the authorized time limit expires. The response shall be in writing within 25 calendar days and shall include a statement of the remedy for a grievance which is upheld, or of the reason a grievance is denied or rejected. Level 2 shall be the final level of appeal for all grievances except as provided in Section 17 below.

17. **Level 3 Review**. Level 3 review is restricted to a grievance which challenges Department level policy; appeals for an emergency grievance which cannot be acted upon at a subordinate level; appeals which challenge the integrity of the grievance procedure; appeals for which a timely response to a Level 2 grievance is not received; and appeals of a grievance rejected at Level 2. If a timely response to a Level 2 grievance is not received an inmate may appeal to Level 3 one (1) day after the authorized time limit expires. An appeal to Level 3 must be submitted within five (5) calendar days of receipt of a Level 2 decision. The Level 3 review shall be made by the Commissioner. The response shall be in writing, within 25 days, and shall include a statement of the remedy for a grievance which is upheld, or of the reason a grievance is denied or rejected. Level 3 shall be the final level of appeal for all grievances.

18. **Emergency Grievance**.

   A. **Identification**. An inmate filing an emergency grievance must plainly mark the grievance as "Emergency".
   B. **Expedited Process**. Each Unit Administrator shall develop unit directives for handling emergency grievances, including procedures for assessing the emergency and expediting resolution, or forwarding the grievance without delay to the decision-maker who can resolve the matter.
   C. **Time Limits**. An emergency grievance that requires action within the unit shall receive a response within eight (8) hours followed by a written response within three (3) business days. An emergency grievance that requires substantive response beyond the unit or that is appealed to Level 2 or Level 3 shall receive a response in two (2) business days and a written response in five (5) business days. An emergency grievance that will be mooted by the passage of time specified for emergency grievances shall normally receive a verbal or other response prior to that time.
   D. **Records**. Following notification of the Unit Administrator, the grievance shall be recorded in accordance with the provisions for other grievances except it shall be denoted as an emergency.
   E. **Rejection**. If a grievance submitted as an emergency is ruled at any level not to be an emergency, it shall be returned to the grievant stating that the grievance is not an emergency and the

reasons why. The response shall indicate that the grievance may be resubmitted as a regular grievance. No emergency grievance shall be rejected solely for failure to follow the procedures in the Inmate Grievance Procedure and any unit directives.

19. **Abuse**. Abuse of the Inmate Grievance Procedure shall be determined by the Unit Administrator on a case by case basis. A determination of abuse and any resulting limitation may be appealed to Level 2. An inmate who files five (5) or more grievances in a week or 20 or more in any 180 day calendar period may be determined to be abusing the Inmate Grievance Procedure. An inmate may be limited to not more than 10 active grievances at a time not including any emergency grievance or grievance relating to the inmate's property as specified in Administrative Directive 6.10, Inmate Property.

   A. A determination of abuse shall result in a limitation on the grievance filing process or on a particular subject. The Unit Administrator shall establish the length of limitation commensurate with the degree of abuse. The length of limitation may be for up to six (6) months and may be increased for second and subsequent abuse in increments not to exceed six (6) months. Inmates under limitation for abuse of the Inmate Grievance Procedure shall be allowed to file emergency grievances. Abuse of the emergency Inmate Grievance Procedure may result in limitation of the use of the emergency Grievance Procedure as well.
   B. A limitation of access shall be communicated to the receiving units upon transfer, and may be reviewed by the receiving Unit Administrator.
   C. Notice of limitation shall be made in writing to the inmate.

20. **Records**.

   A. **Description**.

      1. **Grievance File**. A grievance file shall be maintained at each level for each grievance. The grievance file shall include a copy of the grievance, each response, and any supporting documents submitted in support of the grievance, presented during investigation, or relied upon in the decision.
      2. **Grievance Log**. The Grievance Log, CN 9604, Attachment D, shall be maintained at each level and shall include the name and number of the grievant, the dates of initial receipt and of the response at that level, a brief description of the problem and the disposition.

   B. **General Requirements**.

      1. Each unit shall use the grievance log format and the Inmate Grievance Form.
      2. The grievance file and the grievance log shall be systematically maintained by the Grievance Coordinator.
      3. Each grievance log shall be retained as the official record and for data collection purposes.

C. **Retention**. A copy of each completed grievance shall be maintained at the unit for a minimum of three (3) years following final disposition of the grievance.

D. **Restriction**. No copy of a grievance or adverse reference to any grievance shall be placed in an inmate's Master file.

E. **Confidentiality**. The confidentiality of the contents of the grievance file, the grievance log, and any record of an inmate's participation in any grievance proceeding shall be maintained in accordance with the existing state statutes and regulations. All files shall be maintained in a locked cabinet not accessible to any person other than the Grievance Coordinator or Level 1 reviewer. Grievance Coordinators involved in the disposition of a grievance shall have access to records and information essential to the resolution of the grievance. This section shall not be cause for immunity from disciplinary action based on statements made in a grievance.

21. **Reprisal Against Staff**. No staff member who participates in the resolution of a grievance shall be affected negatively for participation in the solution of a grievance.

22. **Reprisal Against Inmates**. In accordance with Administrative Directive 2.17, Employee Conduct, no inmate shall suffer negative consequences such as denial or limitation of access to any privilege, service or program offered by the unit either formally or informally for good faith use or participation in the Inmate Grievance Procedure.

23. **Monitoring and Evaluation**. The Unit Administrator shall conduct an evaluation of the Inmate Grievance Procedure in January of each year. Inmates and employees shall be afforded an advisory role in the evaluation which shall include a review of both the effectiveness and credibility of the Inmate Grievance Procedure and recommendations for revision. An annual report shall be presented to the Commissioner by March 1 of each year. The report shall include the findings and recommendations of the evaluation process, statistical data regarding the number and type of grievances, types of dispositions and level of disposition, sample responses from each level, remedies granted, and evidence of compliance with time limits at each level of decision.

24. **Exceptions**. Any exception to the procedures in this Administrative Directive shall require prior written approval from the Commissioner.