

Ex. E

CN 1305
Rev. 9-25-91

# Administrative Directives Revision Form
## Connecticut Department of Correction

| Number | 1.5 | Title | Public Information and News Media Relations |

**Revisions appear on:**

| Page | Section | Page | Section |
|------|---------|------|---------|
|      |         |      |         |
|      |         |      |         |
|      |         |      |         |
|      |         |      |         |

**Summary of revisions:**

Sec. 7(D) was modified to include evaluating a request for an interview prior to an approval.

Revisions are: ☐ New directive  ☒ Modification  ☐ Recision

Approved: [signature]  2/20/01

| State of Connecticut<br>Department of Correction<br><br>ADMINISTRATIVE<br>DIRECTIVE | DIRECTIVE NUMBER<br><br>1.5 | EFFECTIVE DATE<br><br>March 9, 2001 | PAGE 1 OF<br><br>5 |
|---|---|---|---|
| APPROVED BY [signature] 2/20/01 | SUPERSEDES:<br>Public Information and News Media Relations - 9/25/00 | | |
| | TITLE:<br>Public Information and News Media Relations | | |

1. **Policy.** The Department of Correction shall maintain ongoing communications with the public, news media, legislature and other interested groups and individuals. The Department shall produce, maintain and disseminate information to interested parties concerning its operations, programs and services. Limitations of access shall be to minimize the risk to security, protect the safety of individuals, assure privacy objectives protected by law, observe the rights of victims and maintain legitimate penological interests.

2. **Authority and Reference.**

    A. Connecticut General Statutes, Chapter 3 and Section 18-81.
    B. American Correctional Association Standards for the Administration of Correctional Agencies Second Edition, April 1993, Standards 2-CO-1A-25 and 2-CO-1A-27.
    C. American Correctional Association, Standards for the Administration of Adult Probation and Parole Agencies, Second Edition, March 1981, Standard 2-3021.
    D. American Correctional Association, Standards for Adult Local Detention Facilities, Third Edition, March 1991, Standards 3-ALDF-1A-19 and 3-ALDF-3E-07.
    E. American Correctional Association, Standards for Adult Correctional Institutions, Third Edition, January 1990, Standards 3-4020, 3-4021, 3-4022 and 3-4267.

3. **Office of Public Information.** The Office of the Public Information shall support the agency mission by ensuring that information concerning Department activities is presented in a timely, proactive and professional manner. The Office of Public Information shall coordinate all news media and public relations to include: news media inquiries, requests for reports and information on programs and services; requests for tours by news media and government officials; gathering and reporting departmental data and information; and any other public interest related topics. The Office of Public Information shall have two (2) categories of responsibility, internal and external communications.

    A. **Internal Communications.** The Director of Communications shall be responsible for all internal communications to include: instructing staff about the news media; designing, writing, editing, composing and producing printed materials; and designing, composing and updating information presented on the agency Internet site.
    B. **External Communications.** Public Information Officers shall be responsible for all external communications to include: news media inquiries; public relations; coordination of news media and public

tours; interviews; and on-site critical incident communication. In addition, the External Communications Section shall maintain direct contact with Unit Public Information Officers.

4. **News Media Visitations.** All requests by news media representatives to visit correctional facilities to report on programs or activities shall be referred to and approved by the Office of Public Information.

5. **Pictures.** Pictures shall require advance approval. Identifying pictures of an inmate shall require the inmate's and Department's prior written approval.

6. **Tape or Video Recordings.** Tape or video recordings are prohibited.

7. **Personal Interview of Incarcerated Inmate.** A personal interview may be authorized between an incarcerated inmate and a representative of a news organization. A personal interview will be considered a special visit and shall be subject to the following conditions:

   A. **Requests.** Routine requests for inmate interviews shall be directed in writing to the Office of Public Information. In circumstances where timeliness of reporting is a proper consideration, the written request may be faxed to the Office of Public Information.

   B. **Request Content.** The request should state: (1) the purpose of the interview and the subject matter to be covered; (2) the requested date and time; (3) the correctional unit; and (4) the duration of the interview.

   C. **Attorney Consent.** An unsentenced inmate may be interviewed by a news reporter with the written consent of the inmate's attorney. It shall be the reporter's responsibility to obtain the attorney's written consent and forward same to the Office of Public Information.

   D. **Consent by Sentenced Inmate.** A sentenced inmate may consent or decline an interview. Any inmate wishing to consent to a personal interview with a news organization shall return a signed Release, Attachment A, to the unit counselor to be placed in the inmate's master file. The inmate shall be responsible for sending a copy of the Release to the news representative. It shall be the reporter's responsibility to submit the Release, with their request to interview the inmate, to the Office of Public Information. The Office of Public Information will then evaluate the request. If the interview is approved, the Office of Public Information will then coordinate the scheduling of the interview with the appropriate facility.

   E. **In-Person Interviews.** In the interest of safety and security, an in-person interview by news media shall not be permitted for any inmate confined under security risk level 5, Administrative Detention, Punitive Segregation, or Close Custody. Such inmates shall not be denied access to the news media, but may communicate only through written correspondence or outgoing collect telephone calls where permitted by the Unit Administrator.

    F.    **Limits of Interview**. The interview shall not be videotaped or transmitted by any visual news media whatsoever. The interview shall be limited to the approved purpose and subject matter may not be expanded or changed from the approved topic.

    G.    **Safety and Security**. Questions that place in jeopardy the safety of the community, the staff, the inmate, other inmates, or the correctional unit may not be asked or answered.

    H.    **Offense Information**. Questions regarding an inmate's offense, which could result in an insensitive portrayal of the criminal act, disturb the victim, or the family of the victim, shall be cause for termination of the interview.

    I.    **Department Presence at Interview**. A representative from the Office of Public Information or designated employee of the Department may be present during an interview.

    J.    **Interview Termination**. A scheduled interview may be cancelled or an interview in progress may be terminated if the provisions of this Directive are not followed.

    K.    **Inmate News Conference Prohibited**. An inmate shall not be allowed to participate in a news conference.

8. **News Media Access**. Each request for news media access shall be directed to the Office of Public Information. Such request shall be in writing and shall include:

    A.    The name of the publication or electronic broadcast.
    B.    The nature and subject matter of the proposed news item.
    C.    A statement of any perceived benefit to law enforcement agencies.
    D.    The method of coverage and the type of equipment requested for the proposed coverage.
    E.    The names of all those requesting access to the correctional unit. When practicable all names shall be provided to the Office of Public Information at least 24 hours prior to the anticipated visit.

9. **Evaluation of Access Request**. Each request for news media access shall be evaluated by the Office of Public Information. A decision on whether to approve or deny the request shall be based on the following criteria:

    A.    **News Interest**. The subject matter shall represent a legitimate news interest, and shall not be solely for entertainment purposes.

    B.    **Law Enforcement Benefit**. Whether a print or electronic report results in a significant benefit to law enforcement agencies.

    C.    **Risk**. Poses no undue risk to the safety, security, order or schedule of the community, or the unit.

    D.    **Limitations**. The Department of Correction reserves the right to place limitations on the number of news media personnel, time, equipment, duration, type, and circumstances of the access request. An individual may be denied access if their presence poses a security risk.

    E.    **Impact**. Whether print or electronic report may result in a significant impact upon a legitimate penological interest.

    F.    **Victims**. Whether print or electronic report may tend to result in a negative impact on victims of crime or victim advocacy.

| DIRECTIVE NO. | EFFECTIVE DATE | PAGE | OF |
|---|---|---|---|
| 1.5 | March 9, 2001 | 4 | 5 |

| TITLE |
|---|
| Public Information and News Media Relations |

10. <u>Unit Public Information Officer</u>. The Unit Administrator or designee shall function as the unit's public information officer subject to the limitations of this Directive. Each Unit Public Information Officer shall be encouraged to maintain open lines of communication with news media representatives, respond to inquiries from the news media about unit based activities, programs and events and provide opportunities for on-site observations of correctional units, coordinated and approved through the Office of Public Information. News media representatives shall be encouraged to inquire about activities within the Department of Correction, to visit correctional facilities and to report on programs and activities. A backup Unit Public Information Officer shall be designated in the event of the Unit Public Information Officer's absence. All backup Unit Public Information Officers shall be trained on the Critical Incident Communication Plan. The Unit Public Information Officer shall:

   A. Complete and submit a monthly report to the Office of Public Information, Attachment B.
   B. Coordinate, document and report all Speaker's Bureau activities on the Speakers Bureau Activity Form, Attachment C, within the assigned unit.
   C. Submit all news media-generated print pertaining to their assigned unit to the Office of Public Information.
   D. In an emergency or significant news media generated event, initiate the facility news media staging area as directed in the Critical Incident Communication Plan and assist the on-site Department Public Information Officer.

11. <u>Emergency Provisions</u>. In the event of an emergency condition at a facility or as circumstances require, personal interviews and site visitations shall be suspended. All communication between Department staff and news media representatives shall be accomplished through the Office of Public Information. News media access may be restricted during emergency conditions or as circumstances require. The Department's Public Information Officer(s), shall conduct periodic updates with news media representatives in a timely manner to balance the public's right to know, with the personal safety of all individuals, the protection of property and the restoration of order and security.

12. <u>Inmate Information</u>. Routine information about an inmate may be provided to the news media by the Office of Public Information, Unit Administrator, or designee, as follows:

   A. Inmate's name;
   B. Inmate's age;
   C. Offense(s) for which charged or convicted (subject to non-disclosure laws);
   D. Court of jurisdiction;
   E. Date of admission and length of sentence, if any;
   F. Parole eligibility date or projected release date; and
   G. Inmate home town of record.

13. **Tours**. Individuals and groups must have prior authorization from the Unit Administrator before touring a correctional facility.

    A. **Identification and Inspection**. All tour group members shall provide proper identification which shall include a photo identification card or driver's license. Any article in a tour group member's possession shall be examined prior to admission and non-essential items, including overcoats, may be required to be left outside the secured area of the facility.
    B. **Age Limits**. In no case shall children under the age of 16 be permitted to tour correctional facilities without the written consent of their parent or guardian, the Unit Administrator and the Commissioner of Correction.
    C. **Tour Termination**. Any tour may be denied, cancelled or terminated for security reasons or for failure to follow conditions established in this Directive.

14. **Speakers Bureau Activities**. Staff shall be encouraged to make themselves available to public forums through prepared talks, the presentation of papers or participation in panel discussions. Staff interested in becoming a trained agency speaker for the Speakers Bureau will be authorized by the Office of Public Information and provided with a core curriculum consisting of agency facts and data. The Office of Public Information will update this information as necessary, but at a minimum, on an annual basis, and convey to all Speakers Bureau participants. Staff who are requested, designated or volunteer to make public presentations as a Department of Correction employee and are not Speakers Bureau members, shall submit a Speakers Bureau Activity Form, Attachment C, to the Unit Public Information Officer for authorization by the Unit Head or designee. The Office of Public Information shall assist in providing materials for presentations. Speakers Bureau Activity forms shall be submitted with the Unit Public Information Officer Monthly Report, Attachment B.

15. **Legislative and Public Hearings**. No Department employee or contract vendor shall be allowed to speak on behalf of the Connecticut Department of Correction on any issue relating to the Connecticut Department of Correction during any legislative and/or public hearing without the authorization of the Commissioner or designee. Such restriction shall not include employees, on their own time, appearing on behalf of a recognized employee bargaining unit.

16. **Freedom of Information**. Copies of requests for information under the Freedom of Information Act shall be forwarded to the Deputy Commissioner of Field and Security Operations, who shall coordinate tracking and ensure timely and appropriate responses.

17. **Exceptions**. Any exception to the procedures in this Directive shall require prior written approval from the Commissioner.



# Release

## Connecticut Department of Correction

Attachment A
8/20/98

I, _____
(name)

☐ consent to be interviewed and/or photographed

☐ do not consent to be interviewed and/or photographed

by _____
(name of interviewer or photographer)

of _____
(name of new outlet)

on _____
(date)

I understand that the statement(s) and photograph(s) obtained during this interview or photographic opportunity may be used in publications or audio or video presentations produced by the Department of Correction or in publications or broadcasts prepared by other organizations.

I agree to receive no consideration for consenting to be interviewed or to be photographed.

I understand that the Department of Correction has no control of the use of my statement(s) and/or photograph(s) in publications or broadcasts prepared by other organizations.

On behalf of myself and my heirs and assigns, I release the State of Connecticut and the Department of Correction from any and all claims that may otherwise accrue to me as the result of the publication of my statement(s)obtained during this interview or from the publication or broadcasts of my photograph(s) obtained during this photographic opportunity.

Inmate/offender signature
and number                _____

Witnesses: _____
(name)

_____
(name)



# Unit PIO Monthly Report
## Connecticut Department of Correction

Attachment B
8/20/98
Directive 1.5

Unit name: _____     Month and year: _____
PIO name: _____

## STORY PLACEMENTS:

Media Outlet: _____     Date published: _____
Reporter: _____     Topic: _____


Media Outlet: _____     Date published: _____
Reporter: _____     Topic: _____

## SPEAKERS BUREAU ACTIVITIES:

Staff name: _____     Date of event: _____
Group spoken to: _____


Staff name: _____     Date of event: _____
Group spoken to: _____

## FACILITY TOURS:

Tour group: _____     Date of tour: _____
Name of guide: _____     No. of visitors: _____


Tour group: _____     Date of tour: _____
Name of guide: _____     No. of visitors: _____

## INQUIRIES:

Media Outlet: _____     Date published: _____
Reporter: _____     Topic: _____


Media Outlet: _____     Date published: _____
Reporter: _____     Topic: _____

ATTACHMENT C
# SPEAKERS BUREAU ACTIVITY FORM

Facility:_____ Date:_____

Staff Presenting: _____          _____
                    (Name)                                    (Title)

                _____          _____
                    (Name)                                    (Title)

                _____          _____
                    (Name)                                    (Title)

Location of Speaking Engagement:_____

_____

Time and Date of Speaking Engagement:_____

Curriculum Available:       _____ Yes       _____ No

Topic:_____

Materials Requested:        _____ Yes       _____ No

Audience:_____

Number of People Presenting to:_____

Materials Required:_____

_____

_____

_____

Unit PIO Notified:_____          _____
                               (signature)                            (date)

Unit Head Approval:_____          _____
                                (signature)                            (date)

cc:   Department P.I.O.

Directive 1.5
8/2/00