

Ex. F



CN 1305
Rev. 9-25-91

# Administrative Directives Revision Form
## Connecticut Department of Correction

| Number | 4.1 | Title | Offender Records |

| Revisions appear on: | Page | Section | Page | Section |
|---|---|---|---|---|
| | _____ | _____ | _____ | _____ |
| | _____ | _____ | _____ | _____ |
| | _____ | _____ | _____ | _____ |
| | _____ | _____ | _____ | _____ |

**Summary of revisions:**

Section 2 A, K, L, M and O added additional statutory and legal authority.

Section 3 A and C were added.

Section 4 defined the role of Director of Health Services with regard to inmate health record management.

Section 5 was modified to include the Director's responsibility to develop a Health Records Manual.

Section 6(C)(4) has been clarified regarding section 4 of an inmate master file.

Section 6(D) was changed to include the maintenance of an inmate master file for inmates who transferred out of state or to Whiting Forensic Institute or paroled after 7/94.

Section 6(E) was modified to reference victim notification material.

Section 8 was added to explain the format and maintenance of an inmate health file.

Section 10(B) was added to clarify procedures for the transfer of inmate health records.

Section 10(C) was added to explain the process to follow when an inmate with HIV infection is discharged to the community.

Section 12 was combined to be all narrative, no change in content.

Section 16 was added to indicate the training requirements of Records and Health Services staff.

| Revisions are: | ☐ New directive | ☑ Modification | ☐ Recision |
| Approved | | 2/20/01 | |

| State of Connecticut<br>Department of Correction<br>**ADMINISTRATIVE DIRECTIVE** | DIRECTIVE NUMBER<br>4.1 | EFFECTIVE DATE<br>March 9, 2001 | PAGE 1 OF<br>9 |
|---|---|---|---|
| APPROVED BY [signature] 2/20/01 | SUPERSEDES:<br>Offender Records - 9/3/96 | | |
| | TITLE:<br>Offender Records | | |

1. **Policy.** The Department shall maintain accurate and secure information for each inmate which relates to the incarceration.

2. **Authority and Reference.**

   A. Connecticut General Statutes, Sections 1-1d, 1-15, 1-18(d), 1-81, 4-190(3), 4-193b, 4-193d, 4-194, 11-8 through 11-8(b), 18-81, 18-94, 19a-581 through 19a-583, 19a-585, 20-7(b) through 20-7(d), 52-146d through 52-146j, 52-146i, 52-146o, and Chapter 899.

   B. Regulations of Connecticut State Agencies, 19a-14-40 and 19a-14-43.

   C. Statutory Requirements Regarding Maintenance and Dissemination of Criminal Records in Connecticut, Office of the Connecticut State's Attorney, 1987.

   D. American Correctional Association, Standards for Adult Probation and Parole Field Services, Second Edition, March 1981, Standards 2-3086 through 2-3088.

   E. American Correctional Association, Standards for Adult Correctional Institutions, Third Edition, January 1990, Standards 3-4092, 3-4093, 3-4097, and 3-4376 through 3-4379.

   F. American Correctional Association, Standards for Adult Local Detention Facilities, Third Edition, March 1991, Standards 3-ALDF-1E-01 through 3-ALDF-1E-06, 3-ALDF-1F-08, 3-ALDF-4E-16, 3-ALDF-4E-22, 3-ALDF-4E-31 and 3-ALDF-4E-46 through 3-ALDF-4E-48.

   G. American Correctional Association, Standards for the Administration of Correctional Agencies, April 1993, 2-CO-1E-01 through 2-CO-1E-04 and 2-CO-1E-09.

   H. Connecticut State Library, Office of Public Records Administration, Records Retention Authorization Number 85-13-1.

   I. Connecticut State Library, Office of Public Records Administration, General Schedule IV, "Medical Records and Case Files of Connecticut State Facilities".

   J. Connecticut State Library, Office of Public Records Administration, Records Management Manual.

   K. Doe v Meachum, Civil Action No. H-88-562 (PCD), November 2, 1990.

   L. West v Manson, Civil Action No. H-83-366 (ANH), April 23, 1987.

   M. Smith v Meachum, Civil Action No. H-87-221 (JAC) August 8, 1989.

   N. National Committee on Correctional Health Care, Standards for Health Services in Prisons, January 1987, Standards P-05, P-07, P-28, P-30, P-42, P-64, P-65, P-67.

   O. Administrative Directives 2.7, Training and Staff Development; 4.4, Access to Information; 4.5, Victim Services; 6.10, Inmate Property; 9.7, Inmate Classification and Case Management; 9.10, Inmate Identification and Movement; 10.2, Inmate Education; and 10.13, Inmate Programs.

| DIRECTIVE NO. | EFFECTIVE DATE | PAGE OF | |
|---|---|---|---|
| 4.1 | March 9, 2001 | 2 | 9 |
| TITLE | Offender Records | | |

3. **Definitions.** For the purposes stated herein, the following definitions apply:

   A. **Authorized Representative.** A parent, guardian, or conservator appointed or authorized to act on behalf of a person and empowered by such a person the right of access to personal health information to assert confidentiality of such information consistent with the Connecticut General Statutes.
   B. **Discharged Inmate.** Any person, once committed under authority of a specific judgment or continuance mittimus to the custody of the Commissioner of Correction and through payment of a fine, bail and/or service of sentence has satisfied the conditions of that mittimus.
   C. **Health Authority.** The Director of Health Services or designee.
   D. **Inmate Master File.** An organized collection of specified data relating to an offender in the custody of the Department of Correction.
   E. **Jurisdiction.** The facility, community or interstate unit administratively responsible for an inmate.

4. **Administrative Management.** The Director of Offender Classification and Population Management shall be responsible to administer the inmate master file records function throughout the agency. The Unit Administrator shall be responsible for supervision of facility records, personnel and management of local inmate master files.

   The Director of Health Services or designee shall be responsible to administer the inmate health records function throughout the agency including the management of local inmate health files.

5. **Records Manual.** The Director of Offender Classification and Population Management shall develop a Records Manual containing detailed information concerning offender records procedures which shall be reviewed annually and updated as necessary.

   The Director of Health Services or designee shall develop a Health Records Manual containing detailed information concerning offender health records procedures which shall be reviewed annually and updated as necessary.

6. **Inmate Master File.** An inmate master file shall be created and maintained for each inmate admitted to the custody of the Commissioner of the Department of Correction. At a minimum, the inmate master file shall contain all custody documents pertaining to the inmate and all relevant information regarding the inmate's incarceration, classification, and behavior during confinement. This file shall be kept current, accurate and secure.

   A. **Labeling.** Each inmate master file shall be labeled, using a white label and identified by the assigned CJIS inmate number followed by the inmate last name and first name. The file shall also have the most recent photograph of the inmate on the cover and on the top page of Section 1 in accordance with Administrative Directive 9.10, Inmate Identification and Movement.

| DIRECTIVE NO. | EFFECTIVE DATE | PAGE | OF |
|---|---|---|---|
| 4.1 | March 9, 2001 | 3 | 9 |

| TITLE |
|---|
| Offender Records |

B. <u>Contents</u>. The inmate master file shall include, at a minimum, the following documents:

1. <u>Custody Documents</u>. All applicable legal documents, e.g., warrants, mittimus, and detainers.
2. <u>Identification</u>. Intake and reception documentation, including the following personal data, shall be recorded: (a) offender name; (b) any known alias; (c) inmate number; (d) place of incarceration; (e) date of birth; (f) race; (g) social security number; (h) height; (i) weight; (j) hair and eye color; (k) current full face photo; (l) sex; (m) fingerprint card; (n) place of birth; and (o) tattoos/identifying marks.
3. <u>Criminal History</u>. A criminal record check (State and Federal) and the Presentence Investigation Report/Description of Offense.
4. <u>Classification</u>. All classification information including, but not limited to: (a) Inmate Classification form, CN 9701, in accordance with Administrative Directive 9.7, Inmate Classification and Case Management; (b) objective classification; (c) classification assignments; (d) reviews; (e) approvals or denials for community release, parole and furlough; and (f) a chronological record of significant inmate contacts with the assigned case manager or other unit staff.
5. <u>Programs</u>. Program Activity Log, CN 101302, in accordance with Administrative Directive 10.13, Inmate Programs; and significant program activities and events.
6. <u>Sentence Calculation</u>. Current controlling time sheet, with documentation which supports time calculations including, but not limited to: (a) time restoration; (b) time forfeiture; and (c) time credits shall be included.
7. <u>Incarceration Record</u>. Any applicable victim notification notice, high security notice, DNA requirements and/or receipts, disciplinary report, program/parole violation report.

C. <u>Organization</u>. Each inmate master file shall be either a six (6) or two (2) section file, as appropriate. Any inmate who may be held for a limited period in pretrial status, may have a two (2) section file established. Any other inmate shall have the full six (6) section file. The six (6) section file shall be organized as follows:

1. <u>Section 1 - Prior Incarcerations</u>. A copy of the inmate's current full face photo shall be included. Any material from a prior incarceration shall be included with each incarceration separated by a divider.
2. <u>Section 2 - Inactive Custody Documents</u>. Any inactive writ, detainer, continuance mittimus or other legal document shall be maintained chronologically in this section.
3. <u>Section 3 - Incarceration Record</u>. Any paperwork associated with DNA requirements and/or receipts shall be the top sheet of this section when applicable. The face sheet, any

Outstanding Meritorious Performance Award and Statutory Good Time forfeiture or restoration, and Disciplinary Reports shall be filed chronologically for the current incarceration.

4. <u>Section 4 - Active Legal Documents</u>. A pink file card, which indicates victim notification requirements, shall be the top page of this section when applicable. It shall be followed by the current controlling time sheet. A Records Log shall be kept under the time sheet when applicable. Any active sentencing mittimus shall normally follow, preceded only by any active warrant, detainer, continuance mittimus or writ.

5. <u>Section 5 - Criminal History and Classification</u>. A green file card, which indicates high security risk requirements shall be the top page of this section when applicable. The Inmate Classification Form, CN 9701, shall normally be the top sheet(s) in accordance with Administrative Directive 9.7, Inmate Classification and Case Management, preceded only by the green file card. Any information pertaining to the inmate's criminal history, including the current criminal records check (rap sheet), fingerprint card, Presentence Investigation (PSI), objective classification information and any parole summary shall be included in this section.

6. <u>Section 6 - Program Documentation Information and Correspondence</u>. The Program Activity Log, CN 101302, shall be the top sheet of this section in accordance with Administrative Directive 10.13, Inmate Programs. Any miscellaneous program information or correspondence shall be included chronologically in this section.

The two (2) section file shall be organized as follows:

1. Section 1 shall include any information from a prior incarceration, discharge information, the face sheet, any Outstanding Meritorious Performance Award, Statutory Good Time forfeiture or restoration, disciplinary report, and any inactive continuance mittimus or writ from the present incarceration period shall be included in this section. The Program Activity Log, CN 101302, and the Inmate Classification Form, CN 9701, shall be the two bottom sheets of this section. A green file card, which indicates high security risk requirements shall be the top page of this section when applicable.

2. Section 2 shall include any miscellaneous information and correspondence, which shall be filed chronologically, a Presentence Investigation (PSI), criminal history (rap sheet), objective classification information, classification summary, parole information, any active sentencing mittimus with the controlling sentence on top, any active warrant, detainer, continuance mittimus and writ shall be included in this section. A pink file card, which indicates victim notification requirements shall be the top page of this section when applicable.

    D.    **Maintenance**. The inmate master file shall be maintained by the unit having custody of an inmate and shall transfer with the inmate during confinement or supervision. Master files of inmates transferred to other state agencies, Whiting Forensic Institute or parole after July 1994, are maintained at the facility with jurisdiction.

    E.    **Readmitted Inmate File**. A new inmate master file shall not be created for an inmate previously committed to the Department. A request for the a permanent inmate master file not located at the unit shall be made in accordance with Sections 11 through 13 below, within two (2) business days of admission. The file shall be forwarded to the requesting unit within 10 business days. Victim notification material contained in a readmitted inmate's file shall be handled in accordance with Administrative Directive 4.5, Victim Services.

    F.    **Escape Files**. An inmate master file shall be maintained by the unit having jurisdiction of the inmate prior to escape.

7. **Temporary File**. A temporary file shall be established while awaiting the receipt of the permanent inmate master file. An inmate admitted who has previously had a master file established shall have any temporary records merged with the permanent master file upon receipt. A temporary master file shall be clearly labeled as such on the front cover consistent with Section 6(A) and shall not be used longer than 10 business days unless the permanent master file has been destroyed.

8. **Inmate Health File**. An inmate health file shall be created and maintained for each inmate. At a minimum, the inmate health file shall contain all relevant health information regarding the inmate. This file shall be kept current, accurate, confidential and secure.

   Written communications or records legally disclosed to another person or agency, regarding inmate health records, shall bear the following statement: "The confidentiality of this record is required under Chapter 899 of the Connecticut General Statutes. This material shall not be transmitted to anyone without written consent or other authorization as provided in the aforementioned statutes." A copy of the consent form specifying to whom and for what specific use the communication or record is transmitted or a statement setting forth any other statutory authorization for transmittal and the limitations imposed thereon shall accompany such communication or record. In cases where disclosure is made verbally, the person disclosing the information shall inform the recipient that such information is governed by the provision of CGS 52-146d through 52-146j, inclusive.

    A.    **Format and Organization**. Each health record shall be labeled with the inmate's identification number. The inmate's name shall be clearly written or typed on a white adhesive label affixed to the record jacket. Health record forms shall be filed in reverse chronological order, with the most recent information on the top. The Director of Health Services or designee shall establish a list of forms and information to be included in each section of the health record which shall be organized into a left side and right side containing sections as follows:

Case 3:03-cv-00146-WWE    Document 35-5    Filed 06/17/2004    Page 8 of 12

| DIRECTIVE NO. | EFFECTIVE DATE | PAGE OF |
| --- | --- | --- |
| 4.1 | March 9, 2001 | 6   9 |
| TITLE | Offender Records | |

1. **Left Side.** The left side of the health record shall contain the current information pertaining to clinical, initial assessment, laboratory, radiology, consultation, and correspondence.
2. **Right Side.** The right side of the health record shall contain the current information pertaining to mental health, dental, in-patient, and medication.

B. **Documentation.** The health record shall be a repository of all health data gathered on an inmate. The written record shall consist of three (3) major disciplines: medical, dental, and mental health. All documentation shall be in black ink. No colored ink shall be used except to identify allergies which shall be in red ink only. All entries shall be documented in chronological order and shall include the month, day, year, and time. Each entry shall be signed with the full name and title of the health care provider making the entry. Initials shall not be acceptable. No health care provider shall sign the entry of another health care provider unless for the purpose of countersignature or witness. Blank spaces shall not be left between entries. Only approved abbreviations shall be used in the documentation of any entry.

9. **Other Inmate Files.** Separate inmate files may be maintained for education, in accordance with Administrative Directive 10.2, Inmate Education; and for any inmate participating in an addiction services program, as specified in Administrative Directive 10.13, Inmate Programs.

10. **Transfer of Inmate Master File and Health File.** The inmate master file and health file shall remain in the possession of the unit having jurisdiction. Any inmate master files entrusted to a unit shall be the responsibility of that unit until such inmate master file and health file is transferred to another unit.

    A. **Inmate Master File.** The Unit Administrator or designee of the sending unit shall ensure the inmate master file is complete and current prior to forwarding to the facility.

        1. **Interunit Transfer.** An inmate's master file shall be transferred with the inmate as specified in Administrative Directive 6.10, Inmate Property. When an inmate is transferred to Community Placement the inmate master file shall be forwarded immediately to the unit having jurisdiction. When an inmate is released to parole supervision the inmate master file shall remain with the sending unit.
        2. **Community Placement/Parole Return.** When an inmate is returned from Community Placement or Parole the inmate master file shall be forwarded within 10 business days of receipt of request to the receiving unit.

Case 3:03-cv-00146-WWE   Document 35-5   Filed 06/17/2004   Page 9 of 12

| DIRECTIVE NO. | EFFECTIVE DATE | PAGE | OF |
| --- | --- | --- | --- |
| 4.1 | March 9, 2001 | 7 | 9 |// 
| TITLE | Offender Records | | |

B. <u>Inmate Health Record</u>. The contractor provider's Health Services Administrator or designee of the sending unit shall ensure the inmate health file is complete and current prior to forwarding to the facility.

1. <u>Removal from the Health Services Unit</u>. No health record, copy of a health record or any part of a health record shall be removed from a Health Services Unit unless it is necessary for the record to accompany the inmate to a medical, dental, or mental health appointment, facility transfer or as otherwise specified in this Directive.

2. <u>Facsimile and Automated Transmission</u>. No health record, copy of a health record or any part of a health record shall be sent by facsimile and/or other automated transmission to any location other than a Department Health Services Unit or to a community health provider when authorized by the Director of Health Services or designee or dictated by a medical emergency.

3. <u>Pre-Transfer Review</u>. Prior to transfer of an inmate to another Department facility, an appropriate Health Services staff member shall review the health record and assess the inmate's suitability for transfer and travel. When appropriate the staff member shall provide documentation necessary to ensure that the inmate receives appropriate care during travel and upon the inmate's arrival at the receiving facility.

4. <u>Health Record Transfer</u>. Upon transfer of an inmate to another facility, Health Services staff shall communicate with the transporting staff member(s) to ensure that the health record is transported simultaneously with the inmate. When the health record leaves the health unit for transfer or any other authorized purpose, the health record shall be packaged in an envelope large enough to accommodate the volume. The inmate's name and number shall be written on the outside along with the name of the receiving Health Services unit or designated person authorized to receive the health record. The envelope shall be sealed with a confidential sticker. In the absence of Health Services staff coverage, appropriately trained operational staff designated by the Unit Administrator shall package the health record for transport. Operations staff shall be limited to securing and packaging the health record.

5. <u>Discharge or Transfer to Community Placement</u>. When the inmate is transferred to community supervision or discharged from Department custody, the health record may be retained at the releasing facility or transferred to the facility closest to the community placement program, if appropriate.

C. <u>Records of Inmates with HIV Infection</u>. Prior to the release of an inmate with HIV infection into the community, health care staff shall prepare a discharge packet, including a copy of CN 4402, Inter-Agency Patient Referral Report Form (W-10); CN 4403, Transfer Summary Form; and CN 4401, Authorization for Release of Information Form. The information which is provided in the

| DIRECTIVE NO. 4.1 | EFFECTIVE DATE March 9, 2001 | PAGE 8 OF 9 |
|---|---|---|
| TITLE | Offender Records | |

discharge Packet shall include all current diagnoses, current problems, treatments which have been provided and the inmate's response to treatment, complications noted, allergies description of condition on discharge, and any follow-up instructions. A copy of the Discharge Packet shall be placed in the inmate's health record as well as being forwarded to the community health care provider. The inmate shall be offered a copy of the Discharge Packet.

When an inmate with HIV infection is transferred to community placement or discharged from the Department, HIV health information shall be forwarded to the Central Office Risk Management Unit.

11. <u>Access to Inmate Master File and/or Health File Information</u>. Access to inmate master file and/or health file information shall be as provided in Administrative Directive 4.4, Access to Inmate Information.

12. <u>Discharged Health File and Inmate Master File Annual Review</u>. The Director of Health Services or designee shall ensure that the health record is subject to regular, periodic quality assurance review by the designated contractor provider's Health Services staff.

The Central Records Unit shall administer an annual review of discharged inmates' master files. The review, conducted by the records unit at each facility or community services unit, shall check: the length of time since discharge; if the inmate returned to the system since discharge; and whether the inmate was ever charged with a felony and/or misdemeanor. If the inmate has been charged only with a misdemeanor(s), and the discharge year is more than three (3) years in the past, the inmate's computer file location code shall be set to the value for "destroyed" and the file shall be destroyed locally through shredding, burning or other means guaranteeing the confidentiality of the documents, and if the inmate has been charged with a felony, the inmate's computer file location code shall be checked and the file shall be set aside in a secure location for transportation to the designated storage location.

13. <u>Storage of Discharged Inmate Master and Health Files</u>. The records of any discharged inmate shall be stored in a secure area, as specified in Administrative Directive 4.4, Access to Inmate Information. The discharged inmate's records shall be numerically sorted by the calendar year during which the inmate discharged. The inmate master file for each discharged inmate shall be stored as follows:

   A. <u>Facility/Community Services Storage</u>. Any inmate master file which meets the following criteria, shall have the inmate master file stored in a facility/community services, as appropriate, until it is requested or it is transferred to a designated storage location: any inmate who discharges from a facility/community services unit.

    B.    <u>Community Services Storage</u>. Any inmate master file, which meets the following criteria, shall have the inmate master file stored in a community services office until it is requested or it is transferred to designated storage location: any inmate who discharges or escapes from community resident supervision.

    C.    <u>Inactive File Storage</u>. The Director of Offender Classification and Population Management shall designate a storage location for discharged inmates' master files. Upon completion of a review, in accordance with Section 12 above, the inmate master file of any inmate, who has been discharged, and has remained out of the system, for more than three (3) years, shall be transported to the designated storage location. The Central Records Unit shall begin processing the inactive files for long term storage by sorting the files numerically according to the calendar year during which the inmate discharged. Such files shall be reviewed for transfer. The Central Record Unit shall arrange for transportation of the completely processed files to the State Archives.

14. <u>Records Retrieval</u>. Any person requiring archived records shall contact the Central Records Unit, who shall retrieve the requested files and make whatever changes in the archived storage list.

15. <u>Storage, Transfer and Disposal of Inactive Inmate Master Files</u>. Any inactive inmate master file shall be maintained in accordance with the retention schedule. Whenever an inactive inmate master file is requested, the file shall be transferred within 10 business days. The Unit Administrator of the facility/community enforcement office last having custody of the inmate shall verify that legal custody of the inmate has been satisfied and terminated prior to deactivation of the inmate master file.

16. <u>Training</u>. The Director of Offender Classification and Population Management and the Director of Health Services or designee shall work in conjunction with the Director of Training and Staff Development to ensure that Department wide training is conducted in accordance with Administrative Directive 2.7, Training and Staff Development.

    A.    <u>Records Staff</u>. Any newly employed records staff shall receive formal orientation training in records procedures within the initial 90 days of employment. Each unit records employee shall receive 16 hours of in-service training annually.

    B.    <u>Health Services Staff</u>. The Director of Health Services or designee shall ensure that the contractor provider's Health Services staff are properly trained in the use and implementation of the health record.

17. <u>Audits</u>. The Director of Offender Classification and Population Management shall ensure that each records unit is audited annually.

18. <u>Exceptions</u>. Any exception to the procedures in this Administrative Directive shall require the prior written approval from the Commissioner.