UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

```
LUIS FERNANDEZ                   :
                                 :              PRISONER
         v.                      :   Case No.  3:03cv146(WWE)(HBF)
                                 :
MONICA RINALDI, et al.[1]        :
```

RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff, Luis Fernandez, is currently confined at the
MacDougall Correctional Institution in Suffield, Connecticut.
He commenced this civil rights action pursuant to 28 U.S.C.
§ 1915.  He alleges that the defendants failed to timely process
his requests to view his master file and his Freedom of
Information Act ("FOIA") requests.  Pending before the court is
the defendants' motion for summary judgment.  For the reasons set
forth below, the motion for summary judgment will be granted.

I.    Standard of Review

"The trial court's task at the summary judgment motion stage
of the litigation is carefully limited to discerning whether
there are genuine issues of material fact to be tried, not to
deciding them.  Its duty, in short, is confined at this point to
issue-finding; it does not extend to issue-resolution."  Gallo v.

---

[1]The defendants named in the amended complaint are: Monica
Rinaldi, Counselor Beth Halleran, Commissioner John Armstrong,
Major J.V. Hall, Captain John M. Alves, Deputy Commissioner
Dennis C. Coyle, C.S. Bartholomew, Warden Hector Rodriguez,
Grievance Coordinator Ahmed and C. S. Unit Manager Hannah.

Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).  The burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  See Rule 56(c), Fed. R. Civ. P.; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)).  Not all factual disputes are material.  The court considers the substantive law governing the case to identify those facts which are material.  "[O]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson, 477 U.S. at 248.

A court must grant summary judgment "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact . . . .'"  Miner v. Glen Falls, 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted).  An asserted dispute over a material fact is considered "genuine," so as to defeat the motion for summary judgment, "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  McCarthy v. American Int'l Group, Inc., 283 F.3d 121, 124 (2d Cir. 2002).

Even though the burden is on the moving party to demonstrate

the absence of any genuine factual dispute, the party opposing summary judgment "may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that his version of relevant events is not fanciful."  Podell v. Citicorp Diners Club, Inc., 112 F.3d 98, 101 (2d Cir. 1997) (internal quotation marks and citations omitted).  It "'must do more than simply show that there is some metaphysical doubt as to the material facts.'"  Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).  The non-moving party "may not rely on conclusory allegations or unsubstantiated speculation."  Fujitsu Ltd. v. Federal Express Corp., 247 F.3d 423, 428 (2d Cir. 2002) (internal quotation marks and citation omitted).  Instead, the non-moving party must produce admissible evidence that supports its pleadings.  See First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289-90 (1968).  A "'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment."  Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) (quoting Anderson, 477 U.S. at 252).

In reviewing a motion for summary judgment the court resolves all ambiguities and draws all inferences in favor of the nonmoving party.  See Niagara Mohawk, 315 F.3d at 175.  Thus, "[o]nly when reasonable minds could not differ as to the import

of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991). See also Suburban Propane v. Proctor Gas, Inc., 953 F.2d 780, 788 (2d Cir. 1992). Where one party is proceeding pro se, the court reads the pro se party's papers liberally and interprets them to raise the strongest arguments suggested therein. See Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). Despite this liberal interpretation, however, a "bald assertion," unsupported by evidence, cannot overcome a properly supported motion for summary judgment. Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991). A motion for summary judgment cannot be defeated "merely . . . on the basis of conjecture or surmise." Trans Sport, Inc. v. Starter Sportswear, Inc., 964 F.2d 186, 188 (2d Cir. 1992) (citation and internal quotation marks omitted).

II. Facts[2]

On June 3, 2002, and again on June 13, 2002, the plaintiff submitted to Major Hall a request for a copy of his inmate master file. In response to both requests, Major Hall informed the

---

[2]The facts are taken from the defendants' Local Rule 56(a)1 Statement of Material Facts Not in Dispute [doc. # 30-2]. The plaintiff's Local Rule 56(a)2 Statement [doc. # 34]; the plaintiff's Affidavit and exhibits attached to the affidavit [doc. # 35], the Affidavits of Joan M. Ellis and Captain John M. Alves and the exhibits attached to those affidavits [docs. ## 30-3, 30-4], the exhibits attached to the defendants' Memorandum of Law in Support of Motion for Summary Judgment [doc. # 30-1] and the exhibits attached to the defendants' Memorandum of Law in Response to Plaintiff's Opposition [doc. # 37].

plaintiff that he must indicate which documents from the file he wanted copied by Department of Correction personnel.  Inmates' master files contain many different types of documents, including mittimuses, disciplinary reports, program application records, some of which are non-disclosable under the Connecticut FOIA. Prior to receiving a response to his second request to Major Hall, the plaintiff submitted a request to Captain Alves under the FOIA for copies of documents.

On June 12, 2002, Captain Alves acknowledged the plaintiff's request for documents pursuant to the FOIA, but informed the plaintiff that the request did not identify the documents to be copied.  On June 18, 2002, the plaintiff submitted an inmate request to view his master file.  On June 20, 2002, Captain Alves approved plaintiff's request to view his master file.  On July 18, 2002, the plaintiff viewed his master file and identified certain records from the file to be copied.  That same day, the plaintiff submitted a request to Captain Alves for copies of the documents he had identified from his master file.  The plaintiff indicated that he was submitting the request to clarify his earlier request for documents pursuant to FOIA.  The documents plaintiff identified were a disciplinary report and other records relating to an incident that occurred on October 23, 2001.  On July 19, 2002, Captain Alves acknowledged receipt of the request and informed the plaintiff that he was reviewing the request.

On July 26, 2002, Captain Alves informed the plaintiff that the documents he had requested copies of had been located, but would need to be reviewed for security purposes.  On August 13, 2002, the plaintiff sent an inmate request to Warden Rodriguez complaining that he had not received the copies of the documents he had identified from his master file.  Warden Rodriguez informed the plaintiff that Captain Alves was working on the plaintiff's request and asked the plaintiff to be patient.  On August 19, 2002, Captain Alves informed the plaintiff that the copies he had requested pursuant to FOIA were available.  He asked the plaintiff to submit a check in the amount of $7.50 to cover the cost of copying the documents.

On August 6, 2002, the plaintiff submitted another request pursuant to FOIA for the same documents from his master file that he had identified in July 2002.  Monica Rinaldi, Administrator of Standards and Policy with the Department of Correction, acknowledged receipt of that request on August 22, 2002, and informed the plaintiff that she was investigating the request. On September 5, 2002, Monica Rinaldi informed the plaintiff that his request had been reviewed and that she had determined that he had submitted the same request for documents to Captain Alves in July.  She again notified the plaintiff that he must submit a check in the amount of $7.50 to cover the cost of copying the documents.

State of Connecticut Department of Correction Administrative Directive 3.10(8)(C) provides that "[p]hotocopying for inmates shall normally be restricted to legal materials. . . . An inmate shall be charged twenty-five cents for each page copied. . . . the cost for an indigent inmate, as defined in Administrative Directive 6.10, Inmate Property, shall be waived." As of August 20, 2002, the plaintiff met the definition of indigency as set forth in Administrative Directive 6.10.

III. <u>Discussion</u>

The defendants move for summary judgment on seven grounds. They argue that (1) the Eleventh Amendment bars any claims for damages against the defendants in their official capacities; (2) the State is not a "person" within the meaning of 42 U.S.C. § 1983; (3) the plaintiff fails to state a claim upon which relief may be granted; (4) the plaintiff has failed to allege the personal involvement of defendant Armstrong in the denial of his requests for documents from his master file; 5) the court should decline to exercise supplemental jurisdiction over any state law claims asserted against them; (6) the plaintiff's request for injunctive relief is moot; and (7) the DOC defendants are protected by qualified immunity;

A.    <u>Eleventh Amendment</u>

The defendants first argue that any claims seeking damages against them in their official capacities are barred by the

7

Eleventh Amendment.  Generally, a suit for recovery of money may not be maintained against the state itself, or against any agency or department of the state, unless the state has waived its sovereign immunity under the Eleventh Amendment.  See <u>Florida Dep't of State v. Treasure Salvors</u>, 458 U.S. 670, 684 (1982). Section 1983 does not override a state's Eleventh Amendment immunity.  See <u>Quern v. Jordan</u>, 440 U.S. 332, 342 (1979).  The Eleventh Amendment immunity which protects the state from suits for monetary relief also protects state officials sued for damages in their official capacity.  See <u>Kentucky v. Graham</u>, 473 U.S. 159 (1985).  A suit against a defendant in his official capacity is ultimately a suit against the state if any recovery would be expended from the public treasury.  See <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 101 n.11 (1984).

The plaintiff sues the defendants in their official and individual capacities.  To the extent that the plaintiff sues the defendants in their official capacities for monetary damages, those claims are barred by the Eleventh Amendment.  The motion for summary judgment will be granted as to all claims for damages against the defendants in their official capacities.

B.    <u>Claims Against State of Connecticut</u>

The defendants next argue that the State of Connecticut is not a person within the meaning of 42 U.S.C. § 1983.  The Supreme Court has held that the term "person" does not include a state or

its agencies.  See Will v. Michigan Dep't of State Police, 491
U.S. 58, 66 (1989).  Thus, states are protected from suit by the
Eleventh Amendment unless they waive such protection.  See id.
Connecticut has not waived its Eleventh Amendment immunity from
suit in this circumstance.  See Krozer v. New Haven, 212 Conn.
415, 562 A.2d 1080 (1989), cert denied, 493 U.S. 1036 (1990).
Accordingly, to the extent that any of the claims against the
defendants may be construed as claims against the State of
Connecticut, those claims will be dismissed.

     C.   Failure to State a Claim

     The defendants argue that the plaintiff's claims that
defendants violated provisions of FOIA, denied his requests for
free copies of his master file, failed to respond to grievances,
violated his Fourteenth Amendment rights to Equal Protection and
Due Process rights and violated his Eighth Amendment right to be
free from Cruel and Unusual Punishment fail to state a claim upon
which relief may be granted.  The court will address each claim
separately.

     1.   Freedom of Information and Privacy Act Claims

     The plaintiff alleges that the defendants failed to timely
respond to his requests for copies of documents from his inmate
master file and also failed to provide him with free copies of
the documents in violation of provisions of FOIA and the Privacy
Act.  The FOIA, 5 U.S.C. § 552(b), applies only to federal

agencies as defined in 5 U.S.C. § 551(1).[3]

The Privacy Act, 5 U.S.C. § 552a, permits an individual aggrieved by an agency's non-compliance with certain record-keeping and other requirements of the Privacy Act to bring a civil action for damages "against the agency."  5 U.S.C. § 552a(g)(1).  Under § 552a(a)(1) of the Privacy Act, the term "agency" is defined by reference to 5 U.S.C. § 552(e), a provision of FOIA to "include[s] any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency." 5 U.S.C. §552(f) (formerly 5 U.S.C. §552(e)).  Section 551(1) further provides, in pertinent part, that "'agency' means each authority of the Government of the United States..."  5 U.S.C. §551(1).  Thus, the Privacy Act only applies to federal agencies.

No defendant in this action is a federal agency or an employee of a federal agency.  Accordingly, the defendants are not subject to the provisions of the Privacy Act or FOIA.  Thus, the plaintiff fails to state a claim for relief under FOIA, 5 U.S.C. § 552(b) and the Privacy Act, 5 U.S.C. § 552a.  The court

---

[3]Plaintiff also alleges claims that defendants violated the state FOIA.  However, as discussed further in this ruling, the Court will dismiss the state FOIA claims for lack of supplemental jurisdiction.

concludes that the defendants are entitled to judgment as a matter of law as to the plaintiff's claims under FOIA and the Privacy Act.   The motion for summary judgment is granted as to those claims.

    2. <u>Access to Courts</u>

  The plaintiff also alleges that the defendants failed to permit him to view his master file in a timely manner and failed to provide him with free copies of documents from his master file.  He contends that, as a result, he was unable to challenge conditions of confinement and access the courts.  The defendants argue that he is not entitled to free copies of documents and that he has failed to allege that he suffered an actual injury or was prejudiced in any way due to the denial of access to the copies.

  "It is well established that inmates have a constitutionally protected right of access to the courts." <u>Smith v. Armstrong</u>, 986 F. Supp. 40, 46 (D. Conn. 1996) (citing <u>Bounds v. Smith</u>, 430 U.S. 817, 822-25 (1977)).  In <u>Lewis v. Casey</u>, 518 U.S. 343 (1996), the Supreme Court clarified what is encompassed in an inmate's right of access to the courts and what constitutes standing to bring a claim for the violation of that right. First, the Court held that to show a violation of his right of access to the courts, an inmate must allege an actual injury. <u>Id.</u> at 349.  The fact that an inmate may not be able to litigate

11

effectively once his claim is brought before the court, is insufficient to demonstrate actual injury.  Id. at 355.  Rather, the inmate must show that he was unable to file the initial complaint or petition, or that the complaint he filed was so technically deficient that it was dismissed without a consideration of the merits of the claim.  Id. at 351.  In addition, the Court observed that "the injury requirement is not satisfied by just any type of frustrated legal claim."  Id. at 354.

The plaintiff alleges that the defendants' failure to provide him with documents from his master file interfered with his access to courts.  He does not identify a specific case in which he was unable to file, or allege that he missed any deadlines in any of his existing cases or that any cases were dismissed due to his lack of access to copies of documents from his master file.  In response to the motion for summary judgment, the plaintiff contends that he did inform the defendants that the documents from his master file contained information he needed in connection with a pending court case and refers the court to his amended complaint.  However, review of the amended complaint and the  exhibits thereto reveals no mention of a pending court case relating to his requests for documents from his master file.

In addition, the defendants have submitted evidence demonstrating that the plaintiff did receive the documents he had

12

requested from his master file in response to a discovery request
in a state habeas petition.  On January 21, 2003, Assistant
Attorney General Parille sent the plaintiff documents in response
to a court order in Fernandez v. Warden, CV-02-0469955.  (See
Def.'s Mem. Response Pl.'s Opp'n Mot. Summ. J., Ex. A.)  Those
documents are the same documents plaintiff identified in his
master file to be copied by the defendants.  (See Pl.'s Aff.
Opp'n Mot. Summ. J., Ex. K and Am. Compl., Exs. 13, 14.)  The
state court judge did not rule on the motion to dismiss filed in
the state habeas petition until September 11, 2003, almost nine
months after the plaintiff received the documents.

The plaintiff has failed to meet his burden of demonstrating
that he suffered an injury as a result of the defendants' failure
to provide him with copies of documents from his master file.
Accordingly, the motion for summary judgment will be granted as
to the claim of denial of access to the courts.

### 3.  Failure to Respond to Grievances

The plaintiff alleges that defendants violated his
constitutional right to petition the government for redress of
grievances by failing to respond to two emergency grievances and
an appeal of third grievance pertaining to the defendants alleged
failure to provide him with copies of documents from his master
file.  In response, defendants state that they are not arguing
that the plaintiff failed to exhaust his administrative remedies

13

as to the claims in his amended complaint.  They argue that interference with the right to petition for redress of grievances states a claim for relief only if the interference caused actual harm.

State of Connecticut Department of Correction Administrative Directive 9.6 governs the inmate grievance procedure.  <u>See</u> www.ct.gov/doc/LIB/doc/PDF/AD/ad0906.pdf.  The directive governs inmate access to grievance forms and describes the procedure for timely resolution of grievances.

In <u>Graham v. Henderson</u>, 89 F.3d 75, 80 (2d Cir. 1996), the Second Circuit reiterated that the right to petition the government for redress of grievances is guaranteed by the First and Fourteenth Amendments.  A claim of intentional interference with the right to petition the government is not actionable unless the interference caused actual harm.  <u>See</u> <u>id.</u>  The defendants do not argue that the plaintiff has failed to exhaust his administrative remedies as to the claims in this action.  The claims concerning the denial of copies of documents from the plaintiff's master file were addressed by the court in the preceding section of this ruling.  Thus, the plaintiff has not demonstrated that he was harmed by the defendants failure to respond to his two grievances and the appeal of a third grievance.

To the extent that the plaintiff's claims may be construed as alleging that defendants filed to comply with the procedures set forth in Administrative Directive 9.6, the claim is not cognizable.  This district has previously held that failure of a correctional official to comply with the institutional grievance procedures is not cognizable in an action filed pursuant to 42 U.S.C. § 1983, unless the action caused the denial of a constitutionally or federally protected right.  See Fernandez v. Armstrong, Case No. 3:03-cv-583(JCH) (D.Conn. Dec. 7, 2004); Ruocco v. Tung, No. 3:02cv1443(DJS), 2004 WL 721716, at *14 (D. Conn. Mar 30, 2004); Hunnicutt v. Armstrong, 305 F. Supp. 2d 175, 188 (D. Conn. 2004) (grievance procedure).

The court has determined that the defendants have not violated the plaintiff's right of access to the courts in denying him free copies of documents from his master file.  Thus, the plaintiff has not identified any constitutionally or federally protected right that was violated by defendants' failure to comply with Department of Correction grievance procedures.  The court concludes that any claim that defendants failed to comply with administrative directives does not demonstrate the denial of a constitutionally or federally protected right.  Accordingly, such a claim is not cognizable in this civil rights action.  The defendants' motion for summary judgment will be granted as to any claim for failure to follow institutional grievance procedures.

15

4.   Due Process Claim

The plaintiff claims, without specification, that the actions of the defendants violated his right to Due Process under the Fourteenth Amendment.  The plaintiff has failed to set forth any facts to support such a claim.

The plaintiff alleges that the defendants' failure to comply with Connecticut Department of Correction Administrative Directives governing inmates' access to information and photo copies of documents violated his right to a liberty interest protected by the Due Process Clause of the Fourteenth Amendment. The plaintiff does not identify the liberty interest that the defendants violated.  To the extent that the plaintiff is attempting to argue that the Administrative Directives governing access to an inmate's master file and to copies of the documents from that file create a liberty interest and that the defendants deprived him of that interest when they refused to make him free copies of the documents from his master file, the claim fails.

State of Connecticut Department of Correction Administrative Directive 3.10(8)(C) provides that an inmate will be charged twenty-five cents per page for any document relating to a pending legal matter involving that inmate.  It also provides that the cost for an inmate determined to be indigent under the definition set forth in Administrative Directive 6.10 shall be waived. Here, although the plaintiff met the indigency definition in

16

August 2002, he did not indicate in any of his requests to the defendants that the documents from his master file related to a pending legal matter.  The plaintiff has presented no evidence to show that he informed the defendants that the documents from his master file related to a pending legal matter.  Thus, the defendants did not violate Administrative Directives 3.10.  The defendants' motion for summary judgment will be granted as to plaintiff's Due Process claim.

   5. <u>Equal Protection Claim</u>

  The plaintiff also claims that the defendants deprived him of equal protection of the laws.  Equal protection requires that all persons similarly situated must be treated in the same manner.  <u>See</u> <u>City of Cleburne v. Cleburne Living Center</u>, 473 U.S. 432, 439 (1985).  To prove an equal protection violation, a plaintiff must prove that the defendants intentionally discriminated against an identifiable or suspect class.  <u>See</u> <u>McCleskey v. Kemp</u>, 481 U.S. 279, 292 (1987); <u>Kadrmas v. Dickinson Pub. Schs.</u>, 487 U.S. 450, 457-58 (1988).  Prisoners "either in the aggregate or specified by offense" are not a suspect class. <u>Lee v. Governor of New York</u>, 87 F.3d 55, 60 (2d Cir. 1996).  "To state an equal protection claim, a plaintiff must charge a government officer 'not only with deliberately interpreting a statute against the plaintiff, but also with singling him out alone for that misinterpretation.'" <u>Brady v. Town of Colchester</u>,

863 F.2d 205, 216 (2d Cir.1988) (citation omitted).

The plaintiff does not allege that he was treated differently than any other inmate.  Instead, he claims that the defendants failed to comply with the Connecticut Department of Correction Administrative Directives governing requests for copies of documents.  The plaintiff presents no evidence that those Directives discriminated against a particular class of inmates.  In fact, the Directives were applied to all inmates.

Thus, the plaintiff's equal protection claim fails because he has presented no evidence that he was treated differently from other inmates seeking copies of documents from their master files.  See Giano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir. 1995).  The defendants' motion for summary judgment will be granted as to plaintiff's Equal Protection claim.

### 6.  Eighth Amendment Claims

The plaintiff alleges that the defendants' failure to provide him with free copies of documents from his master file when he only had 16 cents in his prison account violated his right to be free from cruel and unusual punishment under the Eighth Amendment.  The defendants argue that the plaintiff has not alleged that they were deliberately indifferent to his health or safety.

The Supreme Court has defined the contours of the Eighth Amendment protection against cruel and unusual punishment, made

18

applicable to the states by the Fourteenth Amendment, as follows:
"The Eighth Amendment's bar on inflicting cruel and unusual
punishments...'proscribe[s] more than physically barbarous
punishments.'  It prohibits penalties that are grossly
disproportionate to the offense as well as those that transgress
today's broad and idealistic concepts of dignity, civilized
standards, humanity and decency."  Hutto v. Finney, 437 U.S. 678,
685 (1978) (citations omitted).  See also Rhodes v. Chapman, 452
U.S. 337, 347 (1981).  There is no static test for determining
whether conditions of confinement are cruel and unusual.  See
Rhodes, 452 U.S. at 346.  The Eighth Amendment must "draw its
meaning from the evolving standards of decency that mark the
progress of a maturing society."  Id.

The Second Circuit, in addressing the needs protected by the
Eighth Amendment, has stated that sentenced prisoners are
entitled only to "adequate food, clothing, shelter, sanitation,
medical care and personal safety."  Wolfish v. Levi, 573 F.2d
118, 125 (2d Cir. 1978), rev'd on other grounds sub nom. Bell v.
Wolfish, 441 U.S. 520 (1979); Lareau v. Manson, 651 F.2d 96, 106
(2d Cir. 1981).  "To the extent that such conditions are
restrictive and even harsh, they are part of the penalty that
criminal offenders pay for their offenses against society."
Rhodes, 452 U.S. at 347.  Not every governmental action affecting
the interests or well-being of a prisoner is actionable under the

19

Eighth Amendment.  "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety."  Whitley v. Albers, 475 U.S. 312, 319 (1986); see also Gaston v. Coughlin, 249 F.3d 156, 163 (2d Cir. 2001).

The plaintiff does not allege and has not submitted any evidence to show that the failure to provide him with free copies of documents denied him the "minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Accordingly, the plaintiff has failed to meet his burden of demonstrating that the defendants violated his rights under the Eighth Amendment.  The motion for summary judgment will be granted as to this claim.

### 7.    Fourth Amendment Privacy Claims

In the brief statement of his case on fifth page of the amended complaint, the plaintiff makes a passing reference to violations of his Fourth Amendment right to privacy regarding personal information.  He claims that he suffered mental anguish and emotional injury.

It is settled law that prison inmates as an incident of their confinement have a limited, if any, expectation of privacy under the Fourth Amendment.  See Hudson v. Palmer, 468 U.S. 517, 524-30 (1984) (Loss of privacy is an inherent incidence of confinement); United States v. Roy, 734 F.2d 108, 111 (2d Cir.

1984), <u>cert. denied</u>, 475 U.S. 1110 (1986) (Legitimate privacy

expectations "severely curtailed" during incarceration).  Here,

the plaintiff fails to indicate how the defendants violated his

right to privacy.  Rather, he claims that he has a right to

private information in his prison file.  The Fourth Amendment

does not guarantee the plaintiff a right to copies of documents

or access to "private" information in his prison file.  As

indicated in previous sections of this ruling, the plaintiff did

view his inmate master file and the documents he requested were

eventually provided to him pursuant to a discovery request in his

state habeas petition.

Any claim that the plaintiff suffered emotional injury due

to the alleged violation of his right to privacy fails to state a

claim upon which relief may be granted. Under 42 U.S.C. § 1997e

an inmate is prohibited from bringing an action in federal court

which alleges mental or emotional injuries without a prior

showing of a physical injury.[4]  In this case, the plaintiff has

not alleged that he suffered any prior physical injury in

conjunction with his claim of emotional distress due to a

violation of his right to privacy.  Thus, the plaintiff's

allegations that the defendants violated his Fourth Amendment

---

[4] 42 U.S.C. § 1997e(e) provides: "Limitation on recovery.--
No federal civil action may be brought by a prisoner in a jail,
prison or other correctional facility, for mental or emotional
injury suffered while in custody without a prior showing of
physical injury."

right to privacy fail to state a claim upon which relief may

granted.  The motion for summary judgment will be granted as to

the Fourth Amendment claim.

    D.   <u>Claims Against John Armstrong</u>

The defendants argue that the plaintiff has failed to allege

the personal involvement of former Commissioner John Armstrong in

the failure to provide the plaintiff with copies of documents

from his master file.  The plaintiff argues that the allegations

in the amended complaint and exhibits attached to the amended

complaint demonstrate that defendant Armstrong was aware of his

requests for copies and the denial of those requests by other

defendants.

A supervisor may not be held liable under section 1983

merely because his subordinate committed a constitutional tort."

<u>Leonard v. Poe</u>, 282 F.3d 123, 140 (2d Cir. 2002).  Section 1983

imposes liability only on the official causing the violation.

Thus, the doctrine of respondeat superior is inapplicable in

section 1983 cases.  <u>See</u> <u>Blyden v. Mancusi</u>, 186 F.3d 252, 264 (2d

Cir. 1999).

> [A] supervisor may be found liable for his
> deliberate indifference to the rights of
> others by his failure to act on information
> indicating unconstitutional acts were
> occurring or for his gross negligence in
> failing to supervise his subordinates who
> commit such wrongful acts, provided that the
> plaintiff can show an affirmative causal link
> between the supervisor's inaction and [his]
> injury.

Leonard, 282 F.3d at 140.

The plaintiff describes defendant Armstrong as the Commissioner of the Department of Correction and "his action is under color of state law." Compl. at 3. There are no other references to defendant Armstrong in the fact section of the amended complaint. It is apparent that the plaintiff has named former Commissioner Armstrong as a defendant because of his supervisory role in the Department of Correction. The plaintiff has alleged no facts suggesting that defendant Armstrong was personally aware of the plaintiff's requests regarding his master file or that any other prison officials informed him of the plaintiff's requests. Thus, the plaintiff has failed to meet his burden of demonstrating that defendant Armstrong was personally involved in any of the incidents giving rise to the amended complaint. The motion for summary judgment will be granted as to all claims against defendant Armstrong.

E.    State Law Claims

Defendants contend that the court should decline to exercise supplemental jurisdiction over any of plaintiff's state law claims, including claims based on the state FOIA. The court agrees.

Supplemental or pendent jurisdiction is a matter of discretion, not of right. See United Mine Workers v. Gibbs, 383 U.S. 715, 715-26 (1966). Where all federal claims have been

23

dismissed before trial, pendent state claims should be dismissed without prejudice and left for resolution to the state courts. See 28 U.S.C. § 1367(c)(3); Giordano v. City of New York, 274 F.3d 740, 754 (2d Cir. 2001) (collecting cases).

The court has dismissed all federal claims against the defendants.  Thus, the court declines to exercise supplemental jurisdiction over any state law claims on the ground that it has dismissed all claims over which it has original jurisdiction. The motion for summary judgment is granted on this ground.

IV.  <u>Conclusion</u>

The defendants' Motion for Summary Judgment [**doc. #30**] is **GRANTED**.  The court declines to exercise supplemental jurisdiction over any state law claims raised by the plaintiff. See 28 U.S.C. § 1367(c)(3).  The Clerk is directed to enter judgment in favor of defendants and close this case.

**SO ORDERED** this 21st day of March, 2005, at Bridgeport, Connecticut.

```
_____/s/_____
Warren W. Eginton
Senior United States District Judge
```

24